# U.S. District Court
## District of Maine (Bangor)
## CIVIL DOCKET FOR CASE #: <u>1:24–cv–00209–JAW</u>

OLSZEWSKI et al v. HUTCHINS et al
Assigned to: JUDGE JOHN A. WOODCOCK, JR
Referred to: MAGISTRATE JUDGE KAREN FRINK WOLF
Cause: 28:1983 Civil Rights

Date Filed: 06/07/2024
Date Terminated: 07/29/2025
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**ROBERT OLSZEWSKI, JR**

represented by **ANDREWS B. CAMPBELL**
CAMPBELL LAW OFFICES
P.O. BOX 119
BOWDOINHAM, ME 04008
207–666–5601
Email: abc@207legal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**WADE MCCALL**
268 CENTER MINOT HILL ROAD
MINOT, ME 04258
207–576–2498
Email: wademccall@hotmail.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JULIE OLSZEWKSI**

represented by **ANDREWS B. CAMPBELL**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**WADE MCCALL**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**BARRY HUTCHINS**
*Individually and as Former Selectman*

represented by **JEANA M. MCCORMICK**
DRUMMOND WOODSUM &
MACMAHON
84 MARGINAL WAY

SUITE 600
PORTLAND, ME 04101
207−772−1941
Email: jmccormick@dwmlaw.com
*TERMINATED: 11/14/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**OLIVER M. WALTON**
DRUMMOND WOODSUM
84 MARGINAL WAY
SUITE 600
PORTLAND, ME 04101−2480
207−771−9266
Email: owalton@dwmlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**TOWN OF DOVER−FOXCROFT**    represented by  **JEANA M. MCCORMICK**
(See above for address)
*TERMINATED: 11/14/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**OLIVER M. WALTON**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 06/07/2024 | 1 | COMPLAINT against BARRY HUTCHINS, TOWN OF DOVER−FOXCROFT with Jury Demand **PAYMENT OF FILING FEE DUE WITHIN 48 HOURS. IF FILING FEE IS BEING PAID WITH A CREDIT CARD COUNSEL ARE INSTRUCTED TO LOGIN TO CMECF AND DOCKET** *Case Opening Filing Fee Paid* **FOUND IN THE** *Complaints and Other Initiating Documents* **CATEGORY. CHECK PAYMENTS DUE WITHIN 48 HOURS.**, filed by ROBERT OLSZEWSKI, JR, JULIE OLSZEWKSI. (Service of Process Deadline 9/5/2024) Fee due by 6/10/2024.(mlm) (Entered: 06/07/2024) |
| 06/07/2024 | 2 | CIVIL COVER SHEET. (mlm) (Entered: 06/07/2024) |
| 06/07/2024 | | Filing Fee Paid via Credit Card ( Filing fee $ 405 receipt number AMEDC−2964713.), filed by ROBERT OLSZEWSKI, JR.(CAMPBELL, ANDREWS) (Entered: 06/07/2024) |
| 07/30/2024 | 3 | CERTIFICATION for Admission Pro Hac Vice of Wade McCall filed by ANDREWS B. CAMPBELL on behalf of All Plaintiffs (Total admission fee $ 200 receipt number AMEDC−2986131.) The District of Maine is a CM/ECF NextGen Court. If PHV counsel has not previously been granted electronic filing rights with the District of |

| | | |
|---|---|---|
| | | <span style="color:red">Maine, PHV counsel will now need to submit a PRO HAC VICE request in this District via PACER at www.pacer.uscourts.gov</span> (CAMPBELL, ANDREWS) (Entered: 07/30/2024) |
| 07/30/2024 | 4 | NOTICE of APPROVAL by Clerk's Office re 3 Certification for Admission Pro Hac Vice,, Attorney WADE MACCALL for JULIE OLSZEWKSI and ROBERT OLSZEWSKI, JR added to this specific case only.<br><br>Maine has transitioned to the NextGen ECF filing system; therefore, to complete the admissions process, Attorney MacCall must register for a PACER account and/or request the appropriate e−filing rights in the District of Maine via www.pacer.uscourts.gov by 8/6/2024. NOTE: Counsel appearing Pro Hac Vice MUST click on the PRO HAC VICE link when requesting e−filing rights via PACER. For more details on NextGen/PACER go to our website at www.med.uscourts.gov. (lrt) (Entered: 07/30/2024) |
| 08/02/2024 | 5 | First AMENDED COMPLAINT *AGAINST ALL DEFENDANTS* filed by ROBERT OLSZEWSKI, JULIE OLSZEWKSI. (Service of Process Deadline 10/31/2024)(CAMPBELL, ANDREWS) Modified on 8/2/2024 to clean up docket text (clp). (Entered: 08/02/2024) |
| 08/05/2024 | 6 | NOTICE of Appearance by JEANA M. MCCORMICK on behalf of All Defendants (MCCORMICK, JEANA) (Entered: 08/05/2024) |
| 08/12/2024 | 7 | WAIVER OF SERVICE Returned Executed BARRY HUTCHINS waiver sent on 8/3/2024. (CAMPBELL, ANDREWS) Modified on 8/13/2024 to correctly reflect date waiver sent (clp). (Entered: 08/12/2024) |
| 08/12/2024 | 8 | WAIVER OF SERVICE Returned Executed TOWN OF DOVER−FOXCROFT waiver sent on 8/3/2024. (CAMPBELL, ANDREWS) Modified on 8/13/2024 to correctly reflect date waiver sent (clp). (Entered: 08/12/2024) |
| 08/13/2024 | | Set Answer Deadline for BARRY HUTCHINS, TOWN OF DOVER−FOXCROFT per ECF 7 & 8: Answer due by 10/2/2024. (clp) (Entered: 08/13/2024) |
| 10/02/2024 | 9 | MOTION to Dismiss by BARRY HUTCHINS, TOWN OF DOVER−FOXCROFT Responses due by 10/23/2024. (MCCORMICK, JEANA) (Entered: 10/02/2024) |
| 10/15/2024 | 10 | First MOTION EXCEED PAGE LIMIT FOR MEMO *IN OPPOSITION TO MOTION TO DISMISS* by ROBERT OLSZEWSKI, JR Responses due by 11/5/2024. (CAMPBELL, ANDREWS) (Entered: 10/15/2024) |
| 10/15/2024 | 11 | RESPONSE to Motion re 10 First MOTION EXCEED PAGE LIMIT FOR MEMO *IN OPPOSITION TO MOTION TO DISMISS* filed by BARRY HUTCHINS, TOWN OF DOVER−FOXCROFT. Reply due by 10/29/2024. (MCCORMICK, JEANA) (Entered: 10/15/2024) |
| 10/16/2024 | 12 | ORDER granting 10 Motion to Exceed Page Limits. Opposition to Motion to Dismiss limited to 26 pages. By MAGISTRATE JUDGE KAREN FRINK WOLF. (WOLF, KAREN) (Entered: 10/16/2024) |
| 10/23/2024 | 13 | RESPONSE in Opposition re 9 MOTION to Dismiss filed by JULIE OLSZEWKSI, ROBERT OLSZEWSKI, JR. Reply due by 11/6/2024. (Attachments: # 1 Exhibit Notice of Tort claim and prejudgment interest claim)(CAMPBELL, ANDREWS) Modified on 10/24/2024 to remove date text (jwr). (Entered: 10/23/2024) |

| 11/06/2024 | 14 | REPLY to Response to Motion re 9 MOTION to Dismiss filed by BARRY HUTCHINS, TOWN OF DOVER–FOXCROFT. (MCCORMICK, JEANA) (Entered: 11/06/2024) |
|---|---|---|
| 02/19/2025 | 15 | ORDER OF RECUSAL. JUDGE LANCE E. WALKER recused. By JUDGE LANCE E. WALKER. (clp) (Entered: 02/19/2025) |
| 02/19/2025 | | Case Randomly Reassigned to JUDGE JOHN A. WOODCOCK, JR. (clp) (Entered: 02/19/2025) |
| 04/07/2025 | 16 | MOTION for Leave to File *notice of supplemental authority* by ROBERT OLSZEWSKI, JR Responses due by 4/28/2025. (CAMPBELL, ANDREWS) (Entered: 04/07/2025) |
| 04/29/2025 | 17 | ORDER granting 16 Motion for Leave to File Notice of Supplemental Authority. By MAGISTRATE JUDGE KAREN FRINK WOLF. (WOLF, KAREN) (Entered: 04/29/2025) |
| 07/29/2025 | 18 | ORDER ON MOTION TO DISMISS granting 9 Motion to Dismiss By JUDGE JOHN A. WOODCOCK, JR. (CCS) (Entered: 07/29/2025) |
| 07/29/2025 | 19 | JUDGMENT of Dismissal By DEPUTY CLERK: Joanne McCue. (jam) (Entered: 07/29/2025) |
| 08/25/2025 | 20 | First MOTION for Reconsideration re 18 Order on Motion to Dismiss, 19 Judgment *AGAINST ALL DEFENDANTS* by ROBERT OLSZEWSKI, JR Responses due by 9/15/2025. (Attachments: # 1 Exhibit amended complaint)(CAMPBELL, ANDREWS). Added MOTION to Amend on 8/26/2025 (jam). (Entered: 08/25/2025) |
| 09/15/2025 | 21 | RESPONSE in Opposition re 20 First MOTION for Reconsideration re 18 Order on Motion to Dismiss, 19 Judgment *AGAINST ALL DEFENDANTS* MOTION to Amend, 16 MOTION for Leave to File *notice of supplemental authority* filed by BARRY HUTCHINS, TOWN OF DOVER–FOXCROFT. Reply due by 9/29/2025. (MCCORMICK, JEANA) (Entered: 09/15/2025) |
| 09/28/2025 | 22 | REPLY to Response to Motion re 20 First MOTION for Reconsideration re 18 Order on Motion to Dismiss, 19 Judgment *AGAINST ALL DEFENDANTS* MOTION to Amend filed by JULIE OLSZEWKSI, ROBERT OLSZEWSKI, JR. (MCCALL, WADE) (Entered: 09/28/2025) |
| 11/12/2025 | 23 | NOTICE of Appearance by OLIVER M. WALTON on behalf of BARRY HUTCHINS, TOWN OF DOVER–FOXCROFT (WALTON, OLIVER) (Entered: 11/12/2025) |
| 11/12/2025 | 24 | MOTION by Attorney Jeana M. McCormick to Withdraw as Attorney by BARRY HUTCHINS, TOWN OF DOVER–FOXCROFT Responses due by 12/3/2025. (MCCORMICK, JEANA) (Entered: 11/12/2025) |
| 11/13/2025 | 25 | ORDER granting 24 Motion of Attorney McCormick to Withdraw as Counsel. By MAGISTRATE JUDGE KAREN FRINK WOLF. (WOLF, KAREN) (Entered: 11/13/2025) |
| 11/16/2025 | 26 | MOTION for Recusal ( Responses due by 12/8/2025.), MOTION for Order ( Responses due by 12/8/2025.), MOTION for Leave to File ( Responses due by 12/8/2025.), First MOTION disqualification of counsel *drummond woodsum* by ROBERT OLSZEWSKI, JR (CAMPBELL, ANDREWS) (Entered: 11/16/2025) |

| 12/02/2025 | 27 | First MOTION for Recusal *AGAINST JUDGE WOODCOCK* by ROBERT OLSZEWSKI, JR Responses due by 12/23/2025. (Attachments: # 1 Exhibit DOVER FOXCROFT PAYMENTS TO EATON PEABODY, # 2 Exhibit ATTY POTTLE COMMUNICATION TO PLAINTIFF)(CAMPBELL, ANDREWS) (Entered: 12/02/2025) |
|---|---|---|
| 12/05/2025 | 28 | RESPONSE to Motion re 26 MOTION for Recusal MOTION for Order MOTION for Leave to File First MOTION disqualification of counsel *drummond woodsum* filed by BARRY HUTCHINS, TOWN OF DOVER–FOXCROFT. Reply due by 12/19/2025. (WALTON, OLIVER) (Entered: 12/05/2025) |
| 12/11/2025 | 29 | Unopposed MOTION for Recusal of Judge Woodcock and Ancillary Relief in Form of Vacating or Reversal of Dismissal Order date 7/29/2025 by ROBERT OLSZEWSKI, JR Responses due by 1/2/2026. (CAMPBELL, ANDREWS). Added MOTION to Vacate on 12/11/2025 and modified to clean up docket and motion text (jam). (Entered: 12/11/2025) |
| 12/23/2025 | 30 | RESPONSE to Motion re 29 Unopposed MOTION for Recusal and Ancillary Relief in Form of Vacating or Reversal of Dismissal Order date 7/29/2025 MOTION to Vacate, 27 First MOTION for Recusal *AGAINST JUDGE WOODCOCK* filed by BARRY HUTCHINS, TOWN OF DOVER–FOXCROFT. Reply due by 1/6/2026. (WALTON, OLIVER) (Entered: 12/23/2025) |
| 12/28/2025 | 31 | REPLY to Response to Motion re 29 Unopposed MOTION for Recusal and Ancillary Relief in Form of Vacating or Reversal of Dismissal Order date 7/29/2025 MOTION to Vacate, 27 First MOTION for Recusal *AGAINST JUDGE WOODCOCK REPLY TO OPPOSITION TO MOTION TO RECUSE* filed by ROBERT OLSZEWSKI, JR. (CAMPBELL, ANDREWS) (Entered: 12/28/2025) |
| 01/28/2026 | 32 | ORDER ON MOTION FOR JUDICIAL RECUSAL denying 29 Motion for Recusal of Judge Woodcock and Ancillary Relief in Form of Vacating or Reversal of Dismissal Order date[d] July 29, 2025; dismissing as moot 27 Motion for Recusal of Judge Woodcock and Ancillary Relief in Form of Vacating or Reversal of Dismissal Order date[d] July 29, 2025 By JUDGE JOHN A. WOODCOCK, JR. (CCS) (Entered: 01/28/2026) |
| 01/28/2026 | 33 | ORDER ON MOTION TO DISQUALIFY ATTORNEY OLIVER WALTON AND DRUMMOND WOODSUM denying 26 Motion to Disqualify Attorney Oliver Walton and Drummond Woodsum By JUDGE JOHN A. WOODCOCK, JR. (CCS) (Entered: 01/28/2026) |
| 01/28/2026 | 34 | ORDER ON MOTIONS FOR RECONSIDERATION AND TO AMEND COMPLAINT dismissing 20 Motion for Reconsideration ; dismissing 20 Motion to Amend. By JUDGE JOHN A. WOODCOCK, JR. (CCS) (Entered: 01/28/2026) |
| 02/13/2026 | 35 | NOTICE OF APPEAL as to 34 Order on Motion for Reconsideration, Order on Motion to Amend, 33 Order on Motion for Recusal, Order on Motion for Order, Order on Motion for Leave to File, Order on Motion for Miscellaneous Relief 1, 32 Order on Motion for Recusal,,,, Order on Motion to Vacate, by ROBERT OLSZEWSKI, JR . ( Filing fee $ 605 receipt number AMEDC–3249460.)<br><br>**NOTICE TO FILER:** A transcript Report/Order form MUST be completed and submitted to the First Circuit Court of Appeals. The form can be found under the Forms & Fees section on their website at https://www.ca1.uscourts.gov. |

| | | |
|---|---|---|
| | | **NOTICE TO COUNSEL:** Counsel should register for a First Circuit CM/ECF Appellate Filer Account at https://pacer.psc.uscourts.gov. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at https://www.ca1.uscourts.gov/cmecf (CAMPBELL, ANDREWS) (Entered: 02/13/2026) |
| 02/17/2026 | 36 | APPEAL COVER SHEET Re: 35 Notice of Appeal. (mtm) (Entered: 02/17/2026) |
| 02/17/2026 | 37 | CLERK'S CERTIFICATE Re: 35 Notice of Appeal, Documents sent to the U.S. Court of Appeals. (mtm) (Entered: 02/17/2026) |

# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

## APPEAL COVER SHEET

| D.C. # 1:24-cv-00209-JAW | C.C.A. # |
|---|---|
| CASE TITLE: Robert Olszewski, Jr., et al. v. Barry Hutchins, et al. | |
| Name of Counsel for Appellant(s): | Andrews B. Campbell, Esq. Wade McCall, Esq. |
| Name of Counsel for Appellee(s): | Oliver M. Walton, Esq. |
| Name of Judge: | John A. Woodcock, Jr. |
| Court Reporter(s) & Dates: | N/A |
| Transcript Ordered? | ☐ Yes  ☒ No |
| Court Appointed Counsel? | ☐ Yes  ☒ No |
| Fee Paid? | ☒ Yes  ☐ No |
| In Forma Pauperis? | ☐ Yes  ☒ No |
| Motions Pending? | ☐ Yes  ☒ No |
| Guidelines Case? | ☐ Yes  ☒ No |
| Related Case on Appeal? | ☐ Yes  ☒ No |
| C. C. A. # (if available) | |
| Date of Last Appeal | |
| Special Comments: | |

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ROBERT OLSZEWSKI, JR., et al.⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀CIVIL CASE NO.: 1:24-cv-00209-JAW
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
BARRY HUTCHINS, et al.⠀⠀⠀⠀⠀⠀⠀)

## **CLERK'S CIVIL CERTIFICATE**

I, Jennifer P. Lyons, Clerk of the United States District Court for the District of Maine, hereby certify that the following are hereby electronically transmitted to the First Circuit Court of Appeals and constitute the Abbreviated record on appeal:

Documents Numbered:⠀⠀⠀⠀36⠀⠀⠀Appeal Cover Sheet
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀37⠀⠀⠀Clerk's Certificate
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀35⠀⠀⠀Notice of Appeal
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀34⠀⠀⠀Order on Motions for Reconsideration
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀33⠀⠀⠀Order on Motion to Disqualify
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀32⠀⠀⠀Order on Motion for Judicial Recusal

I hereby certify that the record and docket sheet available through ECF to be the certified record and docket entries. All non-electronic documents of record have been forwarded this date with a copy of this Certificate.

Non-Electronic Documents: N/A

Dated: *February 17, 2026.*

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Jennifer P. Lyons, Clerk


⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀By:⠀⠀⠀<u>/s/Maggie Melanson</u>
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Deputy Clerk

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MAINE

ROBERT OLSZEWSKI  JR.
AND JULIE OLSZEWSKI
                Plaintiffs,

vs.                                    Case No.: 1:2024-cv-00209 JAW

THE TOWN OF DOVER-FOXCROFT
      and
BARRY HUTCHINS,
                Defendants,

**NOTICE OF APPEAL TO THE FIRST CIRCUIT COURT OF APPEALS**

     **NOW COME** the Plaintiffs **ROBERT OLSZEWSKI JR** and **JULIE OLSZEWSKI**, through counsel, Andrews B Campbell, and appeal from Judgment and Order of Dismissal date July 29, 2025, from Order Denying Motion to Reconsider and to Amend Complaint, from Order Denying Motion to Disqualify Attorney Oliver and Drummond Woodsum, and from Order Denying Judicial Recusal, all dated January 28, 2025, in the above captioned matter in the United States District Court for the District of Maine.

     A copy of this Notice has been sent by electronic mail to Oliver Mac Walton, counsel for all Defendants, DRUMMOND WOODSUM, 84 Marginal Way, Suite 600, Portland, ME 04101, 207-772-1941, *owalton@dwmlaw.com* and will be caused to be served by electronic filing.

Date:  February 13, 2026

                              Respectfully submitted,

                              */s/Andrews B. Campbell*

                              Andrews Bruce Campbell #1344, # 81253
                              Attorney for Plaintiffs/Appellants

ANDREWS BRUCE CAMPBELL, P.A.
919 Ridge Road, P.O. Box 119
Bowdoinham, ME 04008
207-666-5601; abc@207Legal.com

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ROBERT OLSZEWSKI, JR., et ux.,          )
                                        )
                Plaintiffs,             )
                                        )
        v.                              )          1:24-cv-00209-JAW
                                        )
BARRY HUTCHINS, *individually and as*   )
*former selectman*, et al.,             )
                                        )
                Defendants.             )

**ORDER ON MOTIONS FOR RECONSIDERATION AND TO AMEND
COMPLAINT**

The court rejects the plaintiffs' Federal Rule of Civil Procedure 59(e) motion to amend or alter judgment in which the plaintiffs demanded that the court reconsider its order dismissing their case under 42 U.S.C. § 1983 against a town selectman in both his individual and official capacities and against the town. The court concludes that the plaintiffs have not established that the court's dismissal was based on a manifest error of law or fact or that reconsideration is necessary to prevent a manifest injustice.

I.      **BACKGROUND**

        A.      **Procedural History**

On June 7, 2024, Robert and Julie Olszewski (Plaintiffs), husband and wife, filed a complaint alleging that Barry Hutchins, individually and as former selectman of the town of Dover-Foxcroft, and the town of Dover-Foxcroft (the town) (jointly, the Defendants) violated the First and Fourteenth Amendments to the United States Constitution, Article I of the Maine Constitution, the Maine Civil Rights Act (MCRA)

(Count One), 42 U.S.C. § 1983 (Count Two), the Maine Human Rights Act (MHRA) (Counts Three, Four, and Five), and are liable for intentional infliction of emotional distress (Count Six), negligent infliction of emotional distress (Count Seven), and defamation and invasion of privacy (Count Eight). *Compl. Including Req. for Declaratory and Injunctive Relief* at 9-17 (ECF No. 1) (*Compl.*). On August 2, 2024, Plaintiffs filed an amended complaint, revising their allegations to assert violations of 42 U.S.C. § 1983 (Count One), the First and Fourteenth Amendments to the U.S. Constitution, Article I, Section 6-A of the Maine Constitution, and the MCRA (Count Two), the MHRA (Counts Three, Four, and Five), and raising allegations of intentional infliction of emotional distress (Count Six), negligent infliction of emotional distress (Count Seven),[1] and defamation and invasion of privacy (Count Eight). *Pls.' First Am. Compl. Including Req. for Declaratory and Injunctive Relief* at 10-20 (ECF No. 5) (*Am. Compl.*).

On October 2, 2024, the Defendants filed a motion to dismiss the complaint. *Defs.' Mot. to Dismiss* (ECF No. 9). On October 23, 2024, the Plaintiffs filed their opposition to the motion to dismiss. *Pls.' Opp'n to Defs.' Mot. to Dismiss* (ECF No. 13) (*Pls.' Opp'n to Mot. to Dismiss*). On November 6, 2025, the Defendants filed their reply. *Defs.' Reply in Support of Mot. to Dismiss* (ECF No. 14) (*Defs.' Mot. to Dismiss Reply*). On February 19, 2025, Chief Judge Lance E. Walker recused himself from this case, and the case was randomly assigned to Judge John Woodcock. *Order of Recusal* (ECF No. 15). On July 29, 2025, this Court issued a seventy-one-page

---

[1] The Plaintiffs later withdrew Count VII, the negligent infliction of emotional distress count. *Pls.' Opp'n to Defs.' Mot. to Dismiss* at 19 (ECF No. 13).

decision, granting the motion to dismiss as to the federal claims and dismissing the state claims without prejudice after declining to exercise supplemental jurisdiction. *Order on Mot. to Dismiss* (ECF No. 18) (*Order*). The Clerk entered a judgment of dismissal that same day. *J. of Dismissal* (ECF No. 19).

On August 25, 2025, the Plaintiffs moved for reconsideration and moved to file a second amended complaint. *Pls.' Mot. and Mem. in Support to Recons. Order and J. Date[d] July 29, 2025 Granting Dismissal and for Leave to File Am. Compl.* (ECF No. 20) (*Pls.' Mot.*); *Pls.' Mot.*, Attach. 1, *Pls.' Second Am. Compl. Including Req. for Declaratory and Injunctive Relief* (*Second Am. Compl.*). On September 15, 2025, the Defendants opposed the Plaintiffs' motions. *Defs.' Opp'n to Pls.' Mot. for Recons. and for Leave to File Second Am. Compl.* (ECF No. 21) (*Defs.' Opp'n*). On September 28, 2025, the Plaintiffs filed their reply to the Defendants' opposition. *Pls.' Reply to Defs.' Opp'n to Pls.' Mot. for Recons. and Alteration of the Ct.'s Dismissal of Pls.' Mot. for Recons.* (ECF No. 22) (*Pls.' Reply*).

## B.    The July 29, 2025 Order on Motion to Dismiss

### 1.    The Facts Alleged in the Amended Complaint[2]

On July 29, 2025, after an extended discussion of the Olszewskis' federal claims, the Court dismissed the Olszewskis' amended complaint, declining to exercise supplemental jurisdiction over their many state-law based claims, dismissing them without prejudice. *Order* at 1-71. The Olszewskis' amended complaint describes in

---

[2]    Here, the Court is attempting to be synoptic, describing generally the allegations in the amended complaint without citation to specific paragraphs. In its July 29, 2025 order, each allegation is followed by a citation to the specific paragraph in the amended complaint. *See Order* at 3-17.

detail a long-running, intense, and nasty clash largely between Mr. Olszewski and Barry Hutchins, who for most of the time was a member of the town of Dover-Foxcroft Board of Selectmen. Mr. Olszewski has a mental disability caused by a motor vehicle accident in 1989 that makes it difficult for him to converse and communicate in real time and causes him to become irritable, frustrated, and agitated in certain situations, including conversations in public with public officials.

Although there was something of a history between Mr. Olszewski and the town, the immediate conflict began in January 2022 when Mr. Olszewski petitioned the town government about impassable roads, which he thought restricted emergency services. About this time, Mr. Olszewski met with Mr. Hutchins who was then a selectman for the town. The two began communicating about the town roads and matters escalated with Mr. Hutchins complaining to several town officials in March 2022 that Mr. Olszewski was unstable, a danger, and threat to the community. By April 2022, Mr. Hutchins had publicly accused Mr. Olszewski of harassing him and sending him aggressive emails.

Beginning April 13, 2022, Mr. Olszewski sent Mr. Hutchins a FOAA request and later sent the same request and other FOAA requests to the town. Mr. Hutchins responded to the FOAA request by threatening to have Mr. Olszewski jailed and subsequently attempting to do so. Mr. Hutchins also aggressively responded to Mr. Olszewski's FOAA request on Facebook Messenger with vulgarity and warning him that Mr. Hutchins would pursue criminal charges against him.

On April 27, 2022, Mr. Olszewski petitioned the Board of Selectmen to terminate Mr. Hutchins, and at the close of the hearing, Mr. Hutchins aggressively moved toward Mr. Olszewski. The dispute between Mr. Olszewski and Mr. Hutchins continued at the May 9, 2022 Selectmen Meeting, and spilled out into the parking lot. In May 2022, Mr. Olszewski complained to the Board that Mr. Hutchins was denying his First Amendment rights, and Mr. Hutchins responded that he was within his own First Amendment rights to say what he pleased outside town meetings.

The dispute persisted. At the June 6, 2022 Board meeting, Mr. Olszewski presented seven complaints against Mr. Hutchins, but after that meeting, Mr. Olszewski retreated from involvement and stopped attempting to involve himself in town affairs because he thought he was being provoked and threatened by Mr. Hutchins. Even so, on June 10, 2022, Mr. Hutchins wrote a couple of nasty emails to Mr. Olszewski, demeaning his mental health issues.

On June 11, 2022, Mr. Olszewski contacted the Dover-Foxcroft police to complain about Mr. Hutchins's conduct, alleging that it constituted disability abuse. Officer Ober of the Dover-Foxcroft Police Department investigated the complaint. Even though Mr. Hutchins admitted to Officer Ober that he knew Mr. Olszewski had mental disabilities and he was trying to get into Mr. Olszewski's head, Officer Ober denied that Mr. Hutchins's conduct was abuse and posited that it might amount to harassment.

On June 13, 2022, Mr. Olszewski petitioned the Maine District Court in Dover-Foxcroft alleging that Mr. Hutchins had engaged in a continuing course of conduct to

harass and injure him in retaliation for his exercise of First Amendment and civil rights and accused Mr. Hutchins of trying to break him down due to his disability. Just before a June 30, 2022 court hearing, Mr. Hutchins filed his own petition for protection from abuse against Mr. Olszewski. At the close of the hearing, the presiding judge imposed a no-contact provision against Mr. Olszewski, barring him from attending meetings of the Select Board or going to the town office for the period of the harassment order. On January 19, 2023, the presiding judge mooted all motions going forward.

On December 13, 2022, Mr. Olszewski went to the town office and discussed the court order with Police Chief Matthew Grant to see if he could attend an upcoming Selectmen's meeting. Mr. Olszewski was particularly concerned about a "No Recording" sign on the town office front door and feared it would interfere with his ability to record town meetings and interact with town officials, given his disability. The town subsequently took the position that the town office was not a public forum, and it disallowed private audio and video recording of any town business in the town office. Also on December 13, 2022, a Facebook profile appeared that falsely accused Mr. Olszewski of being a pedophile. Mr. Olszewski says that a Christopher Johnson created the Facebook profile, but he thinks Mr. Hutchins was behind the posting.

On March 6, 2023, Mr. Olszewski filed a petition with the Maine Human Rights Commission against the town of Dover-Foxcroft and Mr. Hutchins and sent notice of tort claims against each. Subsequently, Chief of Police Seth Burns together with Mr. Hutchins sought to reopen the mooted harassment action and to subject Mr.

6

Olszewski to a contempt proceeding based on his December 13, 2022 visit to the town office.

The no-contact order expired on September 1, 2023.[3]  Mr. Olszewski attended the October 23, 2023 Selectmen's meeting.  When Mr. Olszewski spoke at the meeting, he was interrupted by Selectwoman Jane Conroy, who imposed a five-minute speaking rule.  At the meeting, Selectwoman Conroy stated that Mr. Olszewski was threatening her and said that if Mr. Olszewski said anything about her actions, she would sue him.

## 2.    The Court's Decision

The Olszewskis' Amended Complaint contained eight counts.  *Am. Compl.* ¶¶ 60-107.  The Court focused its attention on the two federal counts, dismissing each of the state-law based counts for initiation, if the Olszewskis chose to do so, in state court.  Count One alleged a violation of 42 U.S.C. § 1983 and Count Two violations of the United States Constitution, the Maine Constitution, and the Maine Civil Rights Act.  More specifically, Count One alleged that the town and Mr. Hutchins violated Mr. Olszewski's "rights under the First and Fourteenth Amendments of the United States Constitution."  *Am. Compl.* ¶ 63.  The Olszewskis also point to the Court's stated assumption that his raising of local grievances to the town board was a protected activity, *Order* at 61, and its conclusion that it need not address whether

---

[3]      In paragraph 44 of the amended complaint, the Olszewskis allege that on January 19, 2023, Judge Faircloth "'mooted all motions going forward' effectively concluding the matter on January 19, 2023." *Am. Compl.* ¶ 44.  In paragraph 56, the Olszewskis allege that the "protection order ended on September 1, 2023." *Id.* ¶ 56.  The Olszewskis do not explain this apparent contradiction, but whether the no contact order ended on January 19, 2023 or September 1, 2023 does not affect this Court's ruling.

the alleged constitutional violation took place under color of state law, *id.* at 67, the Olszewskis maintain that these judicial statements reveal that the Court failed to apply the correct standard for review of a motion to dismiss.

## II.   THE PARTIES' POSITIONS

### A.   The Plaintiffs' Motions

In their motions, the Olszewskis ask this Court to reconsider its decision under Federal Rule of Civil Procedure 59(e) and to allow them to amend their complaint under Federal Rule of Civil Procedure 15(a)(2).   *Pls.' Mot.* at 1.

First, the Olszewskis say that the Court failed to obey the directive to accept their allegations as true in determining whether the factual allegations support the reasonable inference that the Defendants were liable for the alleged misconduct.   *Id.* at 2.   They give one example, where the Court wrote, "[e]ven taking Mr. Olszewski at his word" which they say betrays an "erroneous legal approach."   *Id.*   The Olszewskis also point to the Court's stated assumption that his raising of local grievances to the town board was a protected activity, *Order* at 61, and its conclusion that it need not address whether the alleged constitutional violation took place under color of state law, *id.* at 67, the Olszewskis maintain that these judicial statements reveal that the Court failed to apply the correct standard for review of a motion to dismiss.   *Pls.' Mot.* at 2-3.

Second, the Olszewskis argue that the Court committed error by failing to address "the central issue of qualified immunity."   *Pls.' Mot.* at 3-4 (citing *Cnty. of*

*Sacramento v. Lewis*, 523 U.S. 833 (1997), *Foote v. Ludlow Sch. Comm.*,[4] 128 F.4th 336 (1st Cir. 2025); *Green v. Thomas*,[5] 734 F. Supp. 3d 532 (S.D. Miss. 2024), *aff'd in part and reversed in part* 129 F.4th 877 (5th Cir. 2025)).

Third, the Olszewskis say that the Court erred in failing to address their claim that the town and Mr. Hutchins violated Mr. Olszewski's substantive due process rights, saying that the Court should not have required them "to use the magical word 'substantive due process.'" *Id.* at 4-7. The Olszewskis maintain that the Court should have construed their amended complaint liberally to allege a substantive due process claim as well as "new Fourth and Fifth Amendment claims not plead except by brief." *Id.* at 6-7.

Fourth, the Olszewskis ask for leave to amend their amended complaint to "plead more fully the retaliatory First Amendment violation." *Id.* at 7-12. They complain that the Court's characterization of Mr. Hutchins's threats is too "tepid" and "totally dilutes and excuses a potentially [criminal] and continuing threat." *Id.* at 11.

Fifth, the Olszewskis maintain that the amended complaint as it exists "if accepted as true" provides "strong grounds to establish motivation by Defendants to conceal wrongdoing and to retaliate against Plaintiff." *Id.* at 12. They point to the "temporal proximity" between Mr. Olszewski's protected speech and Mr. Hutchins's statement that he was unstable and a threat. *Id.* They also aver that the Court's

---

[4]     The Plaintiffs cite *Feet v. Ladle School Committee*, but the volume and page lead to *Foote v. Ludlow School Committee*, which the Court assumes to be the intended case.
[5]     The Plaintiffs cite *Green v. Thomas*, No. 32-3-CV-126-CWR-ASH, pp 41-62, affirmed in part no 24-60314 (5th Cir. 2025). The Court found the case of *Green v. Thomas*, 734 F. Supp. 3d 532 (S.D. Miss. 2024), *aff'd in part and reversed in part* 129 F.4th 877 (5th Cir. 2025), which the Court cited in the text.

decision "neglects to credit Plaintiff's uncovering mismanagement of $200,000 public funds during the same time period as his charging of road maintenance violations, as a factor likely to result in retaliation." *Id.* at 13-14.

Sixth, the Olszewskis criticize the Court's reliance on the harassment order "as establishing ground for 'no contact' rather than a silencing of Plaintiff," arguing that the Court "ignores that Defendants obtained a Protection from Harassment proceedings without regard to their obligations under First Amendment by making the Town Hall the place of employment of the Selectmen and Selectwomen's place of employment as well as the fact that a companion Order was issued against Hutchins and the Town." *Id.* at 14. The Olszewskis say that "[t]o the extent not clearly indicated in pleadings, Plaintiff would establish this fact on Amendment." *Id.*

Seventh, the Olszewskis contend that the order is flawed because it concluded that the change in town policy was due not to retaliation against Mr. Olszewski but to its determination that the town office was not a public forum. *Id.* at 15-16.

Eighth, the Olszewskis claim that whether the town office is a public forum is a factual, not a legal issue. *Id.* at 16.

Finally, Ms. Olszewski argues that she should have been allowed to proceed with her loss of consortium claim, and to the extent it requires greater specificity, she should be allowed to amend the complaint to be more specific. *Id.* at 16-17.

## B. The Defendants' Opposition

In the Defendants' opposition to the Olszewskis' motions, the Defendants contend that the Olszewskis have failed to establish "an intervening change in

controlling law, a clear legal error, or newly discovered evidence" that "warrants modification of the judgment." *Defs.' Opp'n* at 2. The Defendants maintain that the Olszewskis have failed to meet the standards for a Rule 59(e) motion because they have failed to identify "an intervening change in controlling law" or "newly discovered facts previously unknown to them." *Id.* at 3. Thus, they assert that the only ground for the Olszewskis' Rule 59(e) motion is "clear error." *Id.* The Defendants dispute the Olszewskis' contention that the Court failed to view their first amended complaint in "their preferred way." *Id.* at 3-4. They reject the Olszewskis' assertion that the Court should have considered a substantive due process claim that the Olszewskis failed to plead or adequately present. *Id.* at 4. The Defendants dismiss the Olszewskis' complaints about the Court's failure to address qualified immunity, noting that because the Court concluded that they had failed to properly allege a constitutional violation, qualified immunity did not apply. *Id.* at 5-6. Finally, the Defendants say that Ms. Olszewski cannot "contest the Court's observation that there are no factual allegations in the amended complaint that support [her] claim." *Id.* at 6.

Regarding the Olszewskis' request for leave to file an amended complaint, the Defendants proffer that Rule 15(a) "simply does not apply following entry of a judgment that has not been vacated under some other rule or on appeal." *Id.* at 7 (citing *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006), *Pushor v. Mt. Washington Observatory, Inc.*, No. 2:17-cv-354-NT, 2018 WL 3478892, at *2 (D. Me.

July 19, 2018) and *Quirion v. United States*, No. 1:05-cv-00006-JAW, 2012 WL 5903818, at *2 (D. Me. Nov. 26, 2012)).

### C.    The Plaintiffs' Reply

In their reply, the Olszewskis reiterate their view that the Court should grant the motion to amend the complaint. *Pls.' Reply* at 1.  They argue that justice requires the Court to allow the amendment and maintain there would be no prejudice to the Defendants. *Id.*

Next, the Olszewskis press their contention that the Court should reconsider its order of dismissal to prevent a "manifest injustice" and pursuance of the "interests of justice." *Id.* at 2.  They argue that the order of dismissal "does not square with the law governing decision of a Rule 12(b)(6) Motion." *Id.*  They again point out that the Court used the language, "[e]ven taking Mr. Olszewski at his word," which they reiterate reveals a "[b]egrudging concession" about the Plaintiff's averments, the "opposite of what the law demands." *Id.*  They argue that if the Court had taken Mr. Olszewski at his word, it would have "accepted Plaintiffs' averments that Hutchins, from March 19, 2022 forward made false public posts and statements, . . . filed false and perjurious complaints, . . . culminating in provocation and threats to break him down and blow apart *a person he know was, and targeted because he was, mentally disabled.*" *Id.* at 3 (emphasis in original).  The Olszewskis also criticize the Court's description of Mr. Hutchins's threats as an "unfortunate remark," thereby substituting its own judgment for the facts. *Id.*

Regarding causation, the Olszewskis distinguish *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 55 (1st Cir. 2012), a case cited by the Defendants, stressing that "where there is a choice between a reasonable inference favorable to Plaintiffs and an inference that is unfavorable the Court must draw the favorable inference." *Pls.' Reply* at 4.

Turning to municipal immunity, the Olszewskis say that the Defendants' argument contradicts itself because they assert that it was not necessary for the Court to decide municipal immunity, but that municipal immunity provides an affirmative defense to their claims. *Id.* at 5-6.

Finally, the Olszewskis maintain that the Court erred in dismissing Ms. Olszewski's loss of consortium claim. *Id.* at 6.

## III.    LEGAL STANDARDS

### A.    Rule 59(e) Motion

Federal Rule of Civil Procedure 59(e) provides:

> **(e) Motion to Alter or Amend a Judgment.**  A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment.

Fed. R. Civ. P. 59(e).  "[A] motion 'asking the court to modify its earlier disposition of the case because of an allegedly erroneous legal result is brought under Federal Rule of Civil Procedure 59(e).'"  *United States v. $23,000 in United States Currency*, 356 F.3d 157, 165 n.9 (1st Cir. 2004).  Rule 59(e) "includes motions for reconsideration." 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2012 ed.).  "There are four basic grounds upon which a Rule

59(e) motion may be granted." *Id.* They are: (1) the correction of a manifest error of law or fact upon which the judgment is based, (2) newly discovered or previously unavailable evidence, (3) the prevention of a manifest injustice, and (4) an intervening change in controlling law. *Id.* As the Court reads the Plaintiffs' motion, it rests primarily on manifest error of law or fact and prevention of manifest injustice grounds. *Pls.' Mot.* at 1-17.

"The granting of a motion for reconsideration is an extraordinary remedy which should be used sparingly." *Salmon v. Lang*, 57 F.4th 296, 323 (1st Cir. 2022) (quotation omitted); *accord Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) ("Unless the court has misapprehended some material fact or point of law, such a motion is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected"). "To prevail on such a motion, 'a party normally must demonstrate either that new and important evidence, previously unavailable, has surfaced or that the original judgment was premised on a manifest error of law or fact.'" *Caribbean Mgmt. Grp., Inc. v. Erikon LLC*, 966 F.3d 35, 44-45 (1st Cir. 2020) (quoting *Ira Green, Inc. v. Mil. Sales & Serv. Co.*, 775 F.3d 12, 28 (1st Cir. 2014)).

### B.    Post-Judgment Motions to Amend Complaints

In their motion for reconsideration, the Olszewskis ask the Court for leave to amend their complaint. With their motion for reconsideration, the Olszewskis filed a motion to amend their complaint. "[A] district court cannot allow an amended pleading where a final judgment has been rendered unless that judgment is first set

aside or vacated pursuant to Federal Rule of Civil Procedure 59 or 60." *Guilfoile v. Shields*, 913 F.3d 178, 195 n.17 (1st Cir. 2019) (quoting *Maldonado v. Dominguez*, 137 F.3d 1, 11 (1st Cir. 1998)).  If the Olszewskis had filed a standalone motion to amend without filing a motion for reconsideration, the motion to amend would have been procedurally defective.  *Willis v. Vericel Corp.*, No. 23-cv-10830-NMG, 2024 U.S. Dist. LEXIS 64195, at *1-2 (D. Mass. Apr. 8, 2024) (describing a standalone post-judgment motion to amend as "procedurally defective").

The Court views the Olszewskis' motion to amend complaint in two ways.  First, it has considered the motion to amend as intertwined with the Olszewskis' arguments for reconsideration, and next, it has assumed that the Olszewskis are filing the motion to amend complaint on the assumption that the Court will grant their motion for reconsideration.  At the same time, if the Court denied the motion for reconsideration, the motion to amend would fall of its own weight.

## IV.    DISCUSSION

### A.    The Motion for Reconsideration

#### 1.    Failure to Accept the Plaintiffs' Allegations and Reasonable Inferences as True

In their motion and reply, the Plaintiffs repeatedly contend that the Court failed to obey the admonition of Rule 12(b)(6) because it failed to accept the Plaintiffs' allegations as true and draw reasonable inferences from them.  Simply put, the Plaintiffs are wrong.  First, in its opinion, the Court correctly quoted the first of the "two-step analysis" the First Circuit requires of a district court to rule on a motion to

15

dismiss under <u>Federal Rule of Civil Procedure 12(b)(6)</u>, including the obligation to accept the complaint's factual allegations:

> This is a "two-step analysis. *Cardigan Mountain Sch. v. N.H. Ins. Co.,* <u>787 F.3d 82, 84</u> (1st Ci<u>r. 2015)</u>. "First the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *García-Catalán* [*v. United States*], <u>734 F.3</u>d [100,] 103 [1st Ci<u>r. 2013)</u>] (quoting *Morales-Cruz* [*v. Univ. of P.R.*], <u>767 F.3</u>d [220,] 224 [(1st Ci<u>r. 2012)</u>].

*Order* at 56. Thus, to credit the Plaintiffs' argument, the Court would have to conclude that despite knowing the correct standard for ruling on Rule 12(b)(6) motions, the Court either deliberately or unconsciously applied a different standard, refusing to accept the Plaintiffs' allegations as true. The Court did no such thing.

The Plaintiffs' chief issue on this point is the Court's use of the phrase, "[e]ven taking Mr. Olszewski at his word," when discussing Mr. Olszewski's First Amendment retaliation claim. *Id.* at 63. Here, as the Court noted in its order, the Court was discussing whether Mr. Olszewski's charge that he raised issues of municipal concern and "in response to this protected activity," Selectman Hutchins "retaliated in various ways, including by threatening to have Mr. Olszewski jailed, refusing to give Mr. Olszewski certain emails he requested as part of his MHRC complaint, sending him aggressive e-mails and messages through online platforms, obtaining a protection from harassment order, and imposing a 'no recording' policy at the Town Office." *Id.* at 59. Thus, as the Court wrote, it construed Mr. Olszewski's allegation as a charge that "Defendants retaliated against [him] for exercising his First Amendment rights, through various actions intended to deter, stop, and chill the Plaintiff's speech." *Id.* at 58-59.

In the order, the Court quoted First Circuit caselaw that allows claims of retaliation for the exercise of First Amendment rights under 42 U.S.C. § 1983. *Id.* at 59. The Court then discussed the requirement that a plaintiff in a such a retaliation claim must establish that his speech was protected and that there was "a causal connection between the alleged protected speech and the allegedly retaliatory response." *Id.* at 60 (quoting *Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013)). The Court observed that to prove causation between the speech and the retaliation, a plaintiff must "show[] that the plaintiff's conduct was a 'substantial' or 'motivating' factor in bringing about the allegedly retaliatory action." *Id.* (quoting *Goldstein*, 719 F.3d at 30). The Court further quoted the United States Supreme Court's interpretation in *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) and *Hartman v. Moore*, 547 U.S. 250, 259-60 (2006) that held that the retaliatory animus prong must be the "but-for" cause of the plaintiff's injuries. *Id.*

Applying these principles to the facts alleged in the amended complaint, the Court wrote first that it was assuming but not deciding that Mr. Olszewski's raising of local grievances was a protected activity under the First Amendment. *Id.* at 61. The Olszewskis criticize this language, saying that the Court "appears to question" whether Mr. Olszewski's grievances were protected activity. *Pls.' Mot.* at 2-3. But the Court plainly meant exactly the opposite. In their motion to dismiss, the Defendants seem to acknowledge that some of Mr. Olszewski's comments were about local matters, but they also maintained that "the law does not require that a member of the public have unlimited access to Town government, or any particular person in

Town government." *Defs.' Mot. to Dismiss* at 8.  Given the potential issue as to the extent to which Mr. Olszewski's comments were protected speech, the Court was merely clarifying that it was not reaching that issue and instead, consistent with its Rule 12(b)(6) obligations and Mr. Olszewski's allegations, was treating Mr. Olszewski's comments as protected speech.  The sentence the Plaintiffs now protest was therefore in favor of the Plaintiffs, not in derogation of their claims.

Next, the Plaintiffs focus on the "[e]ven taking Mr. Olszewski at his word" phrase in the order.  Again, context matters.  In the amended complaint, Mr. Olszewski alleged that Mr. Hutchins had claimed that Mr. Olszewski had sent him over 400 threatening and aggressive emails and at the same time conceded that Mr. Hutchins had received a protection from harassment order against him.  *Compare Am. Compl.* ¶ 18, *with* ¶¶ 45-46.  Mr. Olszewski claimed that Mr. Hutchins's allegation of four hundred emails was false.  *Am. Comp.* ¶ 18.  The allegation that Mr. Hutchins lied when he claimed that Mr. Olszewski sent him hundreds of threatening and aggressive emails was potentially contradicted by the fact that a judge had issued a protective order in favor of Mr. Hutchins.  Here, the Court was merely assuring Mr. Olszewski that, even though some allegations in the amended complaint could be viewed as equivocal or contradictory, the Court was taking him at his word that Mr. Hutchins had lied about receiving hundreds of emails from him, just as Rule 12(b)(6) requires.

In sum, on this issue, the Court concludes that the Olszewskis are wrong. The Court was aware of its obligation to accept the allegations in their amended complaint as true and it strictly adhered to this fundamental legal requirement.

### 2.    Qualified Immunity

In its order, the Court determined that the Olszewskis failed to state a federal cause of action against the town of Dover-Foxcroft or Barry Hutchins without regard to whether the principles of qualified immunity applied to them. As the Court concluded that it was not necessary to reach the issue of qualified immunity to decide the motion, the Court did not reach qualified immunity. The Court is unclear why it erred in failing to discuss a non-dispositive issue and render an advisory and unnecessary opinion.

### 3.    Substantive Due Process

In the Olszewskis' motion, they argue that the Court should have addressed their claim that the Defendants violated their substantive due process rights. *Pls.' Mot.* at 4-7. Conceding that they did not use the "magical word," the Olszewskis characterize the failure of the Court to rule on their substantive due process claim as an elevation of form over substance. *Id.* at 4. They also object to the Court's interpretation of their assertion of Fourth and Fifth Amendment claims in their responsive memorandum as erroneously restricting their well pled averments and impermissibly restricting the scope of § 1983. *Id.* at 7.

Here, neither the Plaintiffs' eighteen-page complaint nor their twenty-two-page amended complaint contains the phrase, substantive due process, *Compl.* at 1-18; *Am. Compl.* at 1-22, and the Defendants' original motion to dismiss did not

mention substantive due process. *Defs.' Mot. to Dismiss* at 1-20.  In a footnote in their motion to dismiss, the Defendants noted that the allegations in the amended complaint "refer specifically to a violation of Mr. Olszewski's rights to freedom of expression and to petition" but observed that "the reference to his Fourteenth Amendment rights is simply because the Fourteenth Amendment adopted and applied the First Amendment to the states." *Id.* at 7 n.3.

In the Olszewskis' response, however, they confirmed that they alleged First Amendment violations in their amended complaint but also asserted that they alleged "First, Four, Fifth, and Fourteenth Amendments, the Maine Constitution, and the Maine Civil Rights Act, and the Maine Hu[m]an Rights Act.  Plaintiff does not just rely on the First Amendment." *Pls.' Opp'n to Mot. to Dismiss* at 7.  The Olszewskis described their substantive due process claim as based on "acts as horrendous as the coercive threats of Hutchins." *Id.*  They say that Mr. Hutchins's actions "should shock and does shock the conscience and offend any 'sense of justice.'" *Id.* at 8 (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435-36 (1957)).

In their reply, the Defendants objected to the inclusion of theories of liability not alleged in the amended complaint. *Defs.' Mot. to Dismiss Reply* at 1.  They said that the amended complaint makes only "conclusory references to the Fourteenth Amendment in relation to the Plaintiff's speech and petitioning activity." *Id.* at 2.  Quoting the standards for a substantive due process claim as set forth in *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008), they maintained that the allegations in

the first amended complaint do not state a substantive due process violation. *Defs.'*
*Mot. to Dismiss Reply* at 2.

"It is blackletter law that a plaintiff is the 'master of the claim' and may make
strategic decisions about its framing and purpose." *United States v. Newman*, No.
2:22-cv-00373-JAW, 2025 U.S. Dist. LEXIS 131866, at *15 (D. Me. July 11, 2025);
*Ortiz-Bonilla v. Federacion de Ajedrez de P.R., Inc.*, 734 F.3d 28, 36 (1st Cir. 2013)
("The plaintiff is the 'master of the claim'"). In other words, "it is the party suing, not
the party sued, who enjoys the right to frame the claims asserted in a complaint."
*Haley v. City of Boston*, 657 F.3d 39, 49 (1st Cir. 2011). Here, both the Court and the
Defendants relied on what the Olszewskis alleged as theories for recovery in their
amended complaint, not the theories they posited in their memorandum to deflect a
pending motion to dismiss.

The Olszewskis have not explained why in evaluating the motion to dismiss
the complaint, the Court should have accepted the newly propounded theories in their
legal memorandum not found in their amended complaint. Allegations in a complaint
are meant "to 'give the defendant fair notice of what the . . . claim is and the grounds
on which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting
*Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, it has long been the rule that
assertions in a lawyer's memorandum are not the same as allegations in a complaint.
*Ryan v. Newark Grp., Inc.*, 2025 U.S. Dist. LEXIS 267720 (D. Mass. Dec. 30. 2025);
*Barrett v. Lombardi*, 239 F.3d 23, 27 (1st Cir. 2001) ("allegations in a lawyer's brief
or legal memorandum are insufficient, even under the relatively relaxed prima

facie standard, to establish jurisdictional facts"); *see Gulf Oil Ltd. P'Ship v. Petro. Mktg. Grp.*, 308 F. Supp. 3d 453, 462 n.8 (D. Mass. 2018) (disregarding plaintiff's assertions made in its brief when no similar allegations appeared in the complaint); *Folan v. Santander Consumer USA Inc.*, No. 1:25-cv-11341-JEK, 2025 WL 1707231, at *3 n.8 (D. Mass June 18, 2025) (declining to consider assertions raised only in plaintiff's reply to defendant's opposition brief and not alleged in the complaint); *Ortiz v. Jimenez-Sanchez*, 98 F. Supp. 3d 357, 366 n.5 (D.P.R. 2015) ("[T]he plaintiffs' oppositions introduce a plethora of new allegations and legal theories.  But the plaintiffs cannot, of course, add allegations or claims by furnishing them for the first time in an opposition to a motion to dismiss").

### 4.    Amended Complaint

Even assuming the Court could have intuited a substantive due process claim from the sparse allegations in the Olszewskis' response, the Court is not convinced that Mr. Hutchins' aggressive and vulgar emails are sufficient to establish their new claim of a violation of substantive due process.  In their reply to the Olszewskis' opposition to their motion to dismiss, the Defendants quote the First Circuit's formulation of a substantive due process claim in *Clark v. Boscher*: the plaintiffs must establish "that they suffered the deprivation of an established life, liberty, or property interest, and that such deprivation occurred through governmental action that shocks the conscience." *Defs.' Mot. to Dismiss Reply* at 2 (quoting *Clark*, 514 F.3d at 102).

The Olszewskis correctly cite the recent First Circuit case of *Wadsworth v. Nygren*, 129 F.4th 38, 52 n.8 (1st Cir. 2025), for the proposition that non-physical conduct could shock the conscience.  But the First Circuit also noted in *Wadsworth*

22

that it has "yet to encounter non-physical conduct that rises to that level." *Id.* The *Wadsworth* Court cited *Souza v. Pina*, 53 F.3d 423 (1st Cir. 1995), where a district attorney was alleged to have driven a citizen to suicide by publicly and repeatedly accusing him of being the serial murderer of local women, and *Pittsley v. Warish*, 927 F.2d 3 (1st Cir. 1991), where police officers told little children that they would never see their mother's live-in partner again and refused to allow them to hug and kiss him goodbye when they arrested him. In neither case did the First Circuit find that the conduct shocked the conscience. Like the First Circuit in *Wadsworth*, *Souza*, and *Pittsley*, the Court is skeptical that Mr. Hutchins's statements to Mr. Olszewski meet the high standard the law demands for a non-physical substantive due process claim.

### 5.    Temporal Proximity and the Harassment Order

In their motion, the Olszewskis point to the temporal proximity among Mr. Olszewski's protected speech, Mr. Hutchins's nasty emails, and the town's actions in barring his presence at the town office as prima facie evidence that the Defendants' actions were in retaliation for his protected speech. *Pls.' Mot.* at 12-15. Although the amended complaint is not a model of clarity, the Plaintiffs allege that Mr. Olszewski began to bring matters of public concern, such as impassable road conditions, to the attention of the town selectmen in January 2022. *Am. Compl.* ¶ 13. On March 19, 2022, Mr. Hutchins responded by asserting that Mr. Olszewski was "unstable and clearly showing himself as a threat and a danger and threat to the community" and continued to badger Mr. Olszewski. *Id.* ¶ 15. At the same time, Mr. Hutchins asked Mr. Olszewski for reports confirming his allegations about poor road material, and Mr. Olszewski provided the reports to Mr. Hutchins. *Id.* ¶ 17.

23

Matters escalated in April 2022 with Mr. Olszewski charging that the town manager had paid Elwood Edgerly, the Chair of the Board of Selectmen, over $200,000 in grant money and that the town had spent in excess of $10,000 of taxpayer money for cakes, pastries, and party supplies for personal celebrations. *Id.* ¶ 23. Mr. Olszewski also made FOAA requests for town records during this time, which the town and Mr. Hutchins failed to respond to. *Id.* ¶¶ 19, 21.

During this period, Mr. Hutchins became more aggressive in his responses, falsely claiming at an April 11, 2022 town meeting that Mr. Olszewski had sent him over 400 "threatening and aggressive emails," *id.* ¶ 18, threatening in a vulgar email dated April 13, 2022 to pursue criminal charges against Mr. Olszewski, *id.* ¶ 24, and attempting to get the Chief of Police to arrest Mr. Olszewski for sending the FOAA request. *Id.* ¶ 25. At the May 9, 2022 selectmen meeting, Mr. Olszewski publicly demanded Mr. Hutchins's resignation, and Mr. Hutchins moved aggressively toward him at the meeting and attempted to provoke a physical confrontation in the parking lot. *Id.* ¶¶ 28-29. In May, Mr. Olszewski accused Mr. Hutchins of violating his First Amendment rights and Mr. Hutchins responded that he had his own First Amendment rights. *Id.* ¶¶ 30-31. Then on June 10, 2022, Mr. Hutchins wrote an extremely aggressive email to Mr. Olszewski, saying that he likes to get into the minds of weak people and "break them down little by little at a time until I am ready to completely blow them apart." *Id.* ¶ 32.

Things came to a head when Mr. Olszewski and Mr. Hutchins filed competing protection from harassment petitions against each other in the Maine District Court

in June 2022. Mr. Olszewski says that he filed his petition on June 13, 2022 and that Mr. Hutchins filed his two days before the protection from abuse hearing. *Id.* ¶¶ 39, 41. The amended complaint says that Judge Faircloth of the Maine District Court presided over the June 30, 2022 hearing. *Id.* ¶¶ 43-45. The amended complaint described the result of the dueling protection from harassment petitions:

> At the request of Hutchins, on behalf of himself and Dover-Foxcroft, the court imposed a no contact provision, which legally barred Plaintiff from attending meetings of the Select Board or going to the Town Office at all during the time period of the harassment order. While Plaintiff was not allowed in the Town Office because of the order, The Town made no provision for Plaintiff to conduct Town office business, vote in elections, or attend Town Select Board Meetings. The omission on the part of The Town effectively barred Plaintiff from all town business including the right to vote.

*Id.* ¶ 45. In response to Judge Faircloth's apparent ruling in favor of Mr. Hutchins and the town, the Olszewskis alleged that Judge Faircloth had a conflict of interest and should have recused herself from the proceeding because she had a professional relationship with Attorney Benjamin Cabot, who was representing Mr. Hutchins. *Id.* ¶ 43. The Olszewskis also alleged that Judge Faircloth's no contact order was the direct and proximate result of Mr. Hutchins' "false testimony and allegations that Defendant had been ordered or noticed not to harass or have contact with Hutchins." *Id.* ¶ 46. Mr. Olszewski alleged that in June 2022, he "retreated from involvement and ceased his vigorous attempts to be involved in Town affairs and attending of Select Board meetings." *Id.* ¶ 55. On January 19, 2023, Judge Faircloth mooted all motions going forward, effectively concluding the matter. *Id.* ¶ 44.

Before Judge Faircloth's January 19, 2023 dismissal, the next alleged event in the amended complaint took place on December 13, 2022, when Mr. Olszewski went to the town office and complained that Judge Faircloth's no contact order prevented him from coming to the town office and attending selectmen meetings. *Id.* ¶ 47.[6] Mr. Olszewski wished to attend an upcoming selectmen meeting because he wished to voice his opinions about a proposal to forbid recording selectmen meetings that was on the agenda at the next meeting. *Id.* ¶ 47. Mr. Olszewski's short visit to the Town Office in December 2022 precipitated a criminal investigation of Mr. Olszewski. *Id.* ¶ 52.

After the January lifting of the no contact order and in retaliation for Mr. Olszewski's filing a Maine Human Rights Act complaint against Mr. Hutchins, Mr. Olszewski alleged that in March 2023, the Chief of Police connived with Mr. Hutchins to renew criminal charges against Mr. Olszewski. *Id.* ¶ 51-52. But it is unclear from the complaint whether any new criminal charges were actually instituted against Mr. Olszewski. Next in September 2023, again after the no contact order had been lifted, the Board of Selectmen imposed a five-minute speaking limit at a public meeting when Mr. Olszewski attempted to speak. *Id.* ¶ 56.

### 6. The July 29, 2025 Order and the Allegations in the Amended Complaint

In ruling on its July 29, 2025 order of dismissal, the Court was faced with a somewhat inchoate and sprawling set of allegations involving a large cast of

---

[6]     Mr. Olszewski also says that on December 13, 2022, he was falsely labeled a pedophile by a man named Christopher Johnson, and Mr. Olszewski says that Mr. Hutchins was the source of Mr. Johnson's allegations. *Am. Compl.* ¶ 47.

individuals from the town of Dover-Foxcroft. These included all the members of the Board of Selectmen, the Chief of Police, the Town Manager, and several Dover-Foxcroft police officers. *Id.* ¶ 4. But the heart of the complaint was the bad blood between Mr. Olszewski and Mr. Hutchins.

Here, the amended complaint amply reflected Mr. Hutchins' exceedingly rude and nasty emails to Mr. Olszewski, including one that Mr. Olszewski interpreted as a threat of physical violence. There was certainly evidence of excessive animosity between Mr. Hutchins and Mr. Olszewski, and Mr. Hutchins' language is obviously deplorable as an elected public official. But the Court focused on what the complaint revealed as to why Mr. Hutchins acted so egregiously against Mr. Olszewski. Here, the amended complaint alleged that Mr. Olszewski and Mr. Hutchins faced off in Maine State District Court before Judge Faircloth on June 30, 2022, and the amended complaint alleges that the result of the evidentiary hearing was that Judge Faircloth issued a no contact order against Mr. Olszewski. The amended complaint failed to mention that Judge Faircloth issued a similar no contact order against Mr. Hutchins.

From the Court's perspective, there were two consequences from the Faircloth order. The first is that it broke the causation link between Mr. Olszewski's First Amendment claims and Mr. Hutchins' nasty emails. Having determined that Mr. Olszewski's actions against Mr. Hutchins merited a no contact order and without evidence that Mr. Hutchins' actions against Mr. Olszewski did the same, the Court had little choice but to conclude that there was no probative evidence that Mr. Hutchins had retaliated against Mr. Olszewski for his exercise of First Amendment

rights.  To the contrary, from the allegations in the amended complaint, which the Court accepted as true, it was Mr. Olszewski alone who had merited a no contact order following a full evidentiary hearing.

The second effect of the no contact order was that what followed from late June 2022 to at least January 2023 and perhaps September 2023 was the result of the no contact order, not the result of Mr. Hutchins' First Amendment retaliation.  For the period following January 2023 or September 2023, when the no contact order was lifted, the allegation that the Chief of Police initiated a criminal investigation of Mr. Olszewski did not on its face state a complaint against the Board of Selectmen or Mr. Hutchins, since there is no allegation that they controlled the law enforcement function.  More significantly, as the Court understands the allegation against the Police Chief, the reason for the investigation was Mr. Olszewski's potential violation of the no contact order, not his criticisms of the town.  The final allegation that the Board illegally limited presentations to five minutes at a meeting in September 2023 reflects the Board's control of a public meeting, not limited to Mr. Olszewski but applicable to the general public, and the claim of a First Amendment violation from a time limit on all public presentations, including Mr. Olszewski, is unpersuasive.

### 7.    Town Office as Public Forum

The Olszewskis complain that the town considered his presence at the town office on December 13, 2022 and the town's adoption of a non-recording policy as violations of his First Amendment rights.  They repeat their position in their motion for reconsideration.  The Court reviewed its discussion of this issue in its dismissal order, *Order* at 63, including its footnote 12, and has nothing to add.  *See McBreairty*

*v. Sch. Bd. of RSU22*, 616 F. Supp. 3d 79, 90-93 (D. Me. 2022) (discussing restrictions imposed by a school board); *Carlow v. Mruk*, 425 F. Supp. 2d 225, 247-48 (D.R.I. 2006) (discussing a prohibition against videotaping the meeting of a township planning commission).

### 8.    Loss of Consortium

Ms. Olszewski asks the Court to reconsider its dismissal of her loss of consortium claim.  The Court declines to change the dismissal because there is a better rational for dismissal of her claim than her failure to specify her loss.  Although a loss of consortium claim is independent under Maine law and may be brought and settled separately, it is also "derivative because it arises from the same act that gave rise to the underlying claim and is therefore subject to the same rules and limitations." *Steele v. Botticello*. 2011 ME 72, ¶ 17, 21 A.3d 1023.  Once the Court determined that Mr. Olszewski's federal claims failed, Ms. Olszewski's loss of consortium claim also failed for her federal claims.  *Grant v. Foster Wheeler*, 2016 ME 85, ¶ 14 n.5, 140 A.3d 1242.

### B.    The Motion to Amend Complaint

Embedding within their motion for reconsideration, the Olszewskis reveal for the first time that instead of issuing a no contact order against them only, Judge Faircloth issued a no contact order against Mr. Hutchins and the town as well:

> Plaintiff, granted petition to amend, would show the Order was against the Town and Hutchins also.

*Pl.'s Mot.* at 14 (citing [*Second*] *Am. Compl.* ¶ 44, *Dover Foxcroft DVDC PA* 22-0035, *DVDC PA* 22-0039).[7]  The new allegation is set forth in paragraph 43 of the Plaintiffs' second amended complaint:

> On June 13, 2022, Plaintiff then petitioned the Maine District Court in Dover-Foxcroft alleging that Hutchins, a Selectman for the Town, engaged in a continuing course of conduct to harass and injure Plaintiff and to retaliate against him for the exercise of his First Amendment and civil rights with particular expressed intent to break Plaintiff down due to his disability.  Plaintiff was granted an order prohibiting Defendant Hutchins from harassing him.  Dover-Foxcroft Maine District Court, DVDC 22-0035.

*Second Am. Compl.* ¶ 43.

The Court agrees that it would have been helpful background if the Olszewskis had revealed in their original or amended complaint that Judge Faircloth had issued no contact orders against both Mr. Olszewski and Mr. Hutchins.  From their original allegations, it appeared that having presided over an evidentiary hearing concerning the dispute between Mr. Olszewski and Mr. Hutchins, Judge Faircloth had ruled in favor of Mr. Hutchins and against Mr. Olszewski and issued a no contact order solely against Mr. Olszewski.  *Am. Compl.* ¶¶ 45-46.   The Court's interpretation was buttressed by the Olszewskis' claim that Judge Faircloth should have recused herself because of her professional relationship with Attorney Benjamin Cabot, an allegation consistent with Mr. Olszewski's dissatisfaction with Judge Faircloth's ruling.  *Am. Compl.* ¶ 43.

---

[7]    The Olszewskis cite the wrong paragraph of the second amended complaint, but the Court found the relevant allegation in the proposed amended complaint not at paragraph 44, but at paragraph 43.

If the Olszewskis had correctly presented the Faircloth order in their amended complaint, the Court would not have concluded that Judge Faircloth had ruled in favor of Mr. Hutchins and against Mr. Olszewski in her June 2022 order, and it would not have relied on this fact in making its decision on the motion to dismiss. Although the ruling would have been closer, it would not have changed the result. The Court is still not convinced that it erred when it dismissed their lawsuit.

The first problem is that after an evidentiary hearing in June 2022, Judge Faircloth concluded that both Mr. Olszewski and Mr. Hutchins merited mutual no contact orders. What the Court still faces is a set of allegations that Mr. Olszewski, as a concerned citizen of Dover-Foxcroft, made a series of inquiries about the conduct of town affairs and was met with an extraordinary barrage of vulgar invective from one of the members of the Board of Selectmen. While the Court has expressed its emphatic disapproval of Mr. Hutchins's language, the Court is not convinced that rude, even vulgar language from an elected leader to a citizen provides the basis for a § 1983 claim, particularly after a state judge, upon hearing the countervailing allegations, effectively ruled both were responsible for their separate roles in the dispute.[8]

The second problem is that, as the Court understands the Olszewskis' allegations, the gravamen of their complaint is that Mr. Hutchins and the town took actions against Mr. Olszewski in retaliation for his exercise of his First Amendment

---

[8]    The Court expressly did not rule on the adequacy of the Olszewskis' state claims. *Order* at 67-69. The Olszewskis are free, if they wish to do so, to file a complaint in state court with the same factual allegations unconstrained by the restrictions federal law imposes on § 1983 claims.

rights. Apart from Mr. Hutchins's aggressive emails, the amended complaint claims that the town retaliated against Mr. Olszewski by (1) initiating a no recording policy in December 2022, *Am. Compl.* ¶ 47, (2) barring him from town business after the no contact order, *id.* ¶ 47, (3) beginning a Chief of Police investigation against him in March 2023, *id.* ¶ 51, and (4) attempting to silence him at a Board of Selectmen meeting on October 23, 2023 by imposing a five-minute speaking rule. *Id.* ¶ 56.

But the Court has concluded that the imposition of generally applicable no recording and five-minute speaking limitations policies do not amount to a violation of First Amendment rights, and furthermore, based on the allegations in the amended complaint, the no contact order was the cause of both Mr. Olszewski's lack of access to the town office and the Chief's criminal investigation of him for violating the no contact order. The bottom line is that the allegations in the second amended complaint, if allowed, would not change the Court's ruling. Thus, although the Court considered the new allegations in the second amended complaint in ruling on the motion for reconsideration, the Court concluded that the Olszewskis failed to demonstrate that the Court should grant relief under their Federal Rule of Civil Procedure Rule 59(e) motion, both with and without the allegations in the proposed second amended complaint. Once the Court concluded that the Rule 59(e) motion should not be granted, the Plaintiffs' motion to amend their complaint necessarily failed.

## V.    CONCLUSION

The Court DISMISSES without prejudice Robert Olszewski, Jr. and Julie Olszewski's Motion to Reconsider Order and Judgment Dated July 29, 2025 and for Leave to File Amended Complaint (ECF No. 20).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of January, 2026

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ROBERT OLSZEWSKI, JR., et ux.,              )
                                            )
                    Plaintiffs,             )
                                            )
            v.                              )            1:24-cv-00209-JAW
                                            )
BARRY HUTCHINS, *individually and as*       )
*former selectman*, et al.,                 )
                                            )
                    Defendants.             )

**ORDER ON MOTION TO DISQUALIFY ATTORNEY OLIVER WALTON AND
DRUMMOND WOODSUM**

Because the plaintiffs have not shown a violation of the ethical rules nor any actual prejudice, the court denies the plaintiffs' motion to disqualify defendants' attorney and the law firm serving as counsel for defendants.

## I.    BACKGROUND

On June 7, 2024, Robert and Julie Olszewski (Plaintiffs), husband and wife, filed a lawsuit against Barry Hutchins, individually and as former selectman, and the town of Dover-Foxcroft, Maine (the town), alleging that Mr. Hutchins and the town (collectively, Defendants) violated their federal and state constitutional rights. *Compl. Including Req. for Declaratory and Injunctive Relief* (ECF No. 1) (*Compl.*). More specifically, the Olszewskis claimed that Mr. Hutchins and the town violated Mr. Olszewski's rights under the First and Fourteenth Amendments to the United States Constitution, Article One, Section 6-A of the Maine Constitution, the Maine Human Rights Act, and the Maine Tort Claims Act by retaliating against him for public advocacy.  *Id.* at 9.  Mr. Olszewski sought compensatory damages and a

preliminary injunction, and Ms. Olszewski sought damages for loss of consortium. *Id.* at 10. On August 2, 2024, before the lawsuit had been served on the Defendants, the Olszewskis filed an amended complaint. *Pls.' First Am. Compl. Including Req. for Declaratory and Injunctive Relief* (ECF No. 5) (*Am. Compl.*).

On August 5, 2024, Attorney Jeana M. McCormick of the law firm of Drummond Woodsum entered her appearance on behalf of each Defendant, *Notice of Appearance* (ECF No. 6), and on August 12, 2024, each Defendant waived service of process, *Waiver of Serv.* (ECF Nos. 7, 8). On October 2, 2024, the Defendants filed a motion to dismiss the amended complaint. *Defs.' Mot. to Dismiss* (ECF No. 9) (*Defs.' Mot. to Dismiss*). On October 23, 2024, the Olszewskis filed their opposition to the motion to dismiss. *Pls.' Opp'n to Defs.' Mot. to Dismiss* (ECF No. 13). On November 6, 2024, the Defendants filed a reply to the Plaintiffs' opposition. *Defs.' Reply in Support of Mot. to Dismiss* (ECF No. 14).

On February 19, 2025, Chief Judge Lance Walker, who had been originally randomly assigned the case, issued an order of recusal. *Order of Recusal* (ECF No. 15). On the same day, the case was randomly assigned to this Judge. On July 29, 2025, the Court issued a seventy-one-page order granting the Defendants' motion to dismiss the federal claims and dismissing without prejudice the remaining state claims, *Order on Mot. to Dismiss* (ECF No. 18) (*Dismissal Order*), and on the same day, a judgment of dismissal without prejudice was issued. *J. of Dismissal* (ECF No. 19).

Between August and December of 2025, Plaintiffs filed a motion for consideration and for leave to file an amended complaint[1], a motion to disqualify counsel, and a motion to disqualify the presiding judge.[2]   This order concerns the second motion.   *Mot. to Disqualify Att'y Oliver Walton and Drummond Woodsum* (ECF No. 26) (*Pls.' Disqualification Mot.*).

On November 12, 2025, Attorney Jeana M. McCormick moved to withdraw her appearance on behalf of the Defendants, *Mot. to Withdraw Appearance* (ECF No. 24), which the Magistrate Judge granted the next day.   *Order* (ECF No. 25).   On November 12, 2025, Attorney Oliver M. Walton of the law firm of Drummond Woodsum entered his appearance on behalf of the Defendants.   *Notice of Appearance* (ECF No. 23).

On November 16, 2025, the Plaintiffs moved to disqualify Attorney Walton and the law firm of Drummond Woodsum as counsel for the Defendants.   *Pls.' Disqualification Mot.*   On December 5, 2025, the Defendants opposed the motion to

---

[1]    On August 25, 2025, the Plaintiffs filed a motion for reconsideration and for leave to file an amended complaint.   *Pls.' Mot. and Mem. in Support to Recons. Order and J. Date[d] July 29, 2025 and for Leave to Amend the First Am. Compl.* (ECF No. 20).   On September 15, 2025, the Defendants filed their opposition to the motion for reconsideration and motion to amend complaint.   *Defs.' Opp'n to Pls.' Mot. for Reconsideration and for Leave to File Second Am. Compl.* (ECF No. 21).   On September 28, 2025, the Plaintiffs filed their reply.   *Pls.' Reply to Defs.' Opp'n to Pls.' Mot. for Recons, and Alteration of the Ct.'s Dismissal of Pls.' Mot. for Recons.* (ECF No. 22).

[2]    On December 2, 2025, the Plaintiffs moved for my recusal from this case.   *Pls.' Mot. for Recusal of Judge Woodcock and Ancillary Relief in Form of Vacating or Reversal of Dismissal Order date[d] July 29, 2025* (ECF No. 27).   On December 11, 2025, the Plaintiffs filed a corrected version of their recusal motion.   *Pls.' Mot. for Recusal of Judge Woodcock and Ancillary Relief in Form of Vacating or Reversal of Dismissal Order date[d] July 29, 2025 **corrected page alignment*** (ECF No. 29) (bold in original entry).   On December 23, 2025, the Defendants opposed the Plaintiffs' motion for my recusal. *Defs.' Opp'n to Pls.' Mot. for Recusal* (ECF No. 30).   On December 28, 2025, the Plaintiffs filed their reply to Defendants' opposition.   *Pls.' Reply to Opp'n to Pls.' Mot. to Recuse Hon. Judge A. Woodcock (sic)* (ECF No. 31).

disqualify.  *Defs.' Opp'n to Pls.' Mot. to Disqualify* (ECF No. 28) (*Defs.' Disqualification Opp'n*).  The Plaintiffs did not file a reply.

## II.    THE PARTIES' POSITIONS

### A.    The Plaintiffs' Motion

The Plaintiffs argue that Drummond Woodsum cannot represent both Mr. Hutchins, in his individual and official capacity, and the town of Dover-Foxcroft because the parties have materially different and adverse positions.  *Pls.' Disqualification Mot.* at 5.  In support of the contention that the Defendants are adverse, the Plaintiffs point to the possibility of divergent interests and the "reasonably foreseeable" differences in strategy for each client.  *Id.* at 6.

### B.    The Defendants' Opposition

The Defendants oppose the Olszewskis' motion, arguing that the Olszewskis "fail to cite or address the correct legal standard to disqualify counsel, and they cannot meet the applicable standard."  *Defs.' Disqualification Opp'n* at 1.  Applying the first prong of the applicable standard, the Defendants argue that their continued representation by Drummond Woodsum "will not result in any violation of an ethical rule" as no rule prohibits "the joint representation of co-defendants in litigation."  *Id.* Applying the second prong, the Defendants argue the "Plaintiffs have not shown any conceivable prejudice – let alone concrete harm – to themselves from [Drummond Woodsum's] joint representation of Mr. Hutchins and the Town."  *Id.* at 3.

## III.    LEGAL STANDARDS

When determining whether disqualification is warranted, this Court follows the Maine Rules of Professional Conduct, adopted by the Supreme Judicial Court of Maine.  *See* D. ME. LOC. R. 83.3(d); *Concordia Partners, LLC v. Ward*, No. 2:12-CV-138-GZS, 2012 U.S. Dist. LEXIS 109540, at *1 (D. Me. Aug. 6, 2012).  Thus, this Court applies Maine law.

> In Maine, the Law Court has held that disqualification of an attorney is appropriate only where the moving party produces evidence supporting two findings: (1) "continued representation of the nonmoving party by that party's chosen attorney results in an affirmative violation of a particular ethical rule" and (2) continued representation by the attorney would result in "actual prejudice" to the party seeking that attorney's disqualification.  *Morin v. Maine Educ. Ass'n*, 2010 ME 36, [¶ 9-10,] 993 A.2d 1097, 1100.  As the party moving for disqualification, Defendant "has the burden of showing the grounds for disqualification."  *Casco N. Bank v. JBI Assocs. Ltd.*, 667 A.2d 856, 859 (Me. 1995).  Any order disqualifying an attorney must include "express findings of that ethical violation and resulting prejudice."  *Morin*, [2010 ME 36, ¶ 11, 993 A.2d 1097].

*Concordia Partners*, 2012 U.S. Dist. LEXIS 109540 at *1-2; *see also Sea Salt, LLC v. Bellerose*, No. 2:18-CV-00413-JAW, 2020 U.S. Dist. LEXIS 84072, at *2-3 (D. Me. May 13, 2020) (citing same standard); *In re Zak*, No. 2:17-MC-00192-JHR, 2017 U.S. Dist. LEXIS 222937, at *7 (D. Me. Nov. 19, 2017) (same); *Doe v. Reg'l Sch. Unit No. 21*, No. 2:11-CV-25-DBH, 2013 U.S. Dist. LEXIS 16700, at *2-3 (D. Me. Feb. 7, 2013) (same).

### A.    Applicable Rules of Professional Responsibility

To prevail on a motion for disqualification, the moving party must provide evidence of "an affirmative violation of a particular ethical rule" under the Maine Rules of Professional Conduct.  *Morin*, 2010 ME 36, ¶ 9, 993 A.2d 1097.

Rule 1.10 of the Maine Rules of Professional Conduct provides, "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule[] 1.7 . . . ." M.R. Prof. Conduct 1.10(a).  Rule 1.7, which covers conflicts-of-interest with current clients, provides, in relevant part, as follows:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict-of-interest. A concurrent conflict-of-interest exists if:
>
>   (1) the representation of one client would be directly adverse to another client, even if representation would not occur in the same matter or in substantially related matters; or
>
>   (2) there is a significant risk that the representation of one or more clients would be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict-of-interest under paragraph (a), a lawyer may represent a client if:
>
>   (1) the lawyer reasonably believes that the lawyer would be able to provide competent and diligent representation to each affected client; and
>
>   (2) each affected client gives informed consent, confirmed in writing.

M.R. Prof. Conduct 1.7.  Rule 1.7 thus defines a concurrent conflict-of-interest, but also provides a means by which clients can consent notwithstanding the conflict-of-interest.

## IV.    DISCUSSION

Under Maine law, the Plaintiffs, as the moving party, bear the burden to produce evidence supporting first, that Drummond Woodsum's representation of the

6

Defendants "results in an affirmative violation of a particular ethical rule" and second, that Drummond Woodsum's continued presence would result in "actual prejudice" to the Plaintiffs. *Morin*, 2010 ME 36, ¶¶ 9-10, <u>993 A.2d 1097</u>. Because the Plaintiffs have not shown a violation of the ethical rules nor any actual prejudice, the Court denies the Plaintiffs' motion to disqualify Attorney Walton and Drummond Woodsum as counsel for the Defendants.

### A.    Drummond Woodsum's Representation Presents No Ethical Violation

Drummond Woodsum's continued representation of the Defendants violates no ethical rule. On the contrary, it is expressly authorized by the rules. Rule 1.7 of the Maine Rules of Professional Conduct covers conflicts-of-interest with current clients, declaring "a lawyer shall not represent a client if the representation involves a concurrent conflict-of-interest" and defining a concurrent conflict of interest as follows:

> (1)    the representation of one client would be directly adverse to another client . . .; or

> (2)    there is a significant risk that the representation of one or more clients would be materially limited by the lawyer's responsibilities to another client . . . .

M.R. Prof. Conduct 1.7(a)(1)-(2). Rule 1.7 thus defines a concurrent conflict-of-interest but also provides a means by which clients can consent notwithstanding the conflict-of-interest. The conflict can be waived, save some inapplicable exceptions, where "(1) the lawyer reasonably believes that the lawyer would be able to provide competent and diligent representation to each affected client; and (2) each affected client gives informed consent, confirmed in writing." *Id.* at 1.7(b)(1)-(2).

7

Under Rule 1.7, both here and generally, parties can consent to joint representation in civil matters. *See id.* at 1.7, cmt. (23) ("[C]ommon representation of persons having similar interests in civil litigation is proper if the requirements of paragraph (b) are met"). As the Defendants point out, "[c]ourts across the country have regularly agreed that joint defense may be proper in § 1983 claims against municipalities and individual municipal officials." *Defs.' Disqualification Mot.* at 4-5, 5 n.2 (citing cases). In general, courts have not disqualified the same counsel from representing a municipality and a municipality's employee. *Waggoner v. Marsh*, No. 25-cv-00254-JFH-SH, 2025 U.S. Dist. LEXIS 148922, at *4-11 (N.D. Ok. Aug. 4, 2025); *Nolan v. City of N.Y.*, 754 F. Supp. 3d 548, 552 (S.D.N.Y. 2024); *Billewicz v. Town of Fair Haven*, No. 5:22-cv-73, 2022 U.S. Dist. LEXIS 164427, at *8-9 (D. Vt. Aug. 11, 2022); *Rascon v. Brookins*, No. CV-14-00749-PHX-JJT, 2017 U.S. Dist. LEXIS 38058, at *5-9 (D. Ariz. Mar. 16, 2017); *Granberry v. Byrne*, 2011 U.S. Dist. LEXIS 118293, at *12 (E.D. Pa. Oct. 13, 2011) ("[A]s a matter of policy, the joint defense of individual officers/actors and their employing governmental agencies in § 1983 actions remains a common and accepted practice within the Third Circuit").

Even if there is a potential conflict between the town of Dover-Foxcroft and Mr. Hutchins, based on the Plaintiffs' claims against Mr. Hutchins acting in his personal as opposed to official capacity, this potential is "insufficient for disqualification" when the Defendants have pursued a "unified theory of defense." *Rascon v. Brookins*, 2017 U.S. Dist. LEXIS 38058, at *6 (D. Ariz. Mar. 16, 2017); *Vargas v. City & Cnty. of Honolulu*, No. 19-00116-LEK-WRP, 2020 U.S. Dist. LEXIS 272868, at *9 (D. Hi. Dec.

10, 2020). As the district court in *Rascon* wrote, "[e]ven circuits following strict rules regarding *Monell*[3] liability disqualification require disqualification of counsel representing both an individual officer and the municipal employer in § 1983 cases only where counsel acts in a way that is actually against the officer's interest." In *Waggoner*, the district court observed that "[u]ntil Plaintiffs demonstrate that these potential conflicts have matured into actual ones, the Court declines to employ such a drastic measure as disqualifying counsel and depriving the defendants of their representatives of choice." Furthermore, to require that "governmental entities and their individual employees obtain separate counsel in all such cases would unnecessarily complicate the litigation process at the unwarranted expense of taxpayers." *Granberry*, 2011 U.S. Dist. LEXIS 118293, at *13.

Here, both the town and Mr. Hutchins have presented a "unified theory of defense." On October 2, 2024, defense counsel filed a motion to dismiss on behalf of both Defendants on the same grounds. *See Defs.' Mot. to Dismiss* at 1-19. Even if a conflict in joint representation could perhaps appear if the case progressed further, for example if it neared trial, the general rule is that a court should not disqualify counsel unless and until the potential conflict hardens into an actual conflict. Here, given the fact that the Court granted the motion to dismiss for both Defendants, the possibility that the possible conflict will in fact become a real conflict is remote and speculative.

---

[3]     *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

The Plaintiffs' first argument to the contrary is that Drummond Woodsum's representation of Mr. Hutchins "in his individual personal capacity and in his official capacity is inherently conflicted because the potential defenses are materially adverse and mutually exclusive." *Pls.' Disqualification Mot.* at 5. That is, in the hypothetical where the "Town will defend that Hutchins conduct was *ultra vires*" and therefore and "*actual or implicit approval*" of Mr. Hutchins conduct and therefore a "breach of fiduciary duty to the citizens by the Town." *Id.* (alteration original). The Defendants state that this argument "assumes the merits of Plaintiffs' claims, which Defendants vigorously dispute" and is a speculative "assertion of an ethical violation." *Defs.' Disqualification Mot.* at 6. On the facts before the Court, there is no showing that the Defendants' interests diverge, and the Plaintiffs offer nothing more than speculative argumentation.

Second, the Plaintiffs argue "it is reasonably foreseeable that strategy in this case, may differ greatly for each client" which they further argue is a presumed conflict under Rule 1.7. *Id.* The Plaintiffs are wrong. Not only do the Plaintiffs raise a particularly speculative issue—that Drummond Woodsum may have a different strategy for each Defendant in the case—that is not a clear "affirmative violation of a particular ethical rule," it is also a misstatement of the Rule. *Morin*, 2010 ME 36, ¶ 9, 993 A.2d 1097. Even if there were a conflict of interest due to an adverse interest or material limitation, the clients can consent to joint representation. *See* M.R. Prof. Conduct 1.7(b)(1)-(2). *See Rascon,* 2017 U.S. Dist. LEXIS 38058, at *8 ("Defendants are presumed to be appraised of the potential conflict").

10

Likewise, the Plaintiffs' argument that Drummond Woodsum's concurrent representation "necessarily involves use of privileged information obtained from clients who have materially different and adverse positions" fails for the same reasons. *Pls.' Disqualification Mot.* at 5. As discussed, the Court rejects the contention that Mr. Hutchins and Dover-Foxcroft have materially different or adverse interests and the Court considers the Plaintiffs argumentations entirely speculative, rather than a clear "affirmative violation of a particular ethical rule." *Morin*, 2010 ME 36, ¶ 9, 993 A.2d 1097.

For the foregoing reasons, the Court concludes that the Plaintiff has not demonstrated that continued representation of Defendants by Drummond Woodsum results in an affirmative violation of any rule.

### B. Drummond Woodsum's Representation Does Not Result in Actual Prejudice to the Plaintiffs

Drummond Woodsum's continued representation of the Defendants does not result in actual prejudice to the Plaintiffs. "The Maine Law Court has held that 'the moving party must [also] point to the specific, identifiable harm' he will suffer absent disqualification." *Concordia Partners*, 2012 U.S. Dist. LEXIS 109540 at *21 (citing *Morin*, 2010 ME 36, ¶ 10, 993 A.2d 1097).

Here, the Plaintiffs sole claim of prejudice is that Drummond Woodsum's joint representation "may . . . prejudice Plaintiffs" when it comes "to possible motions to attach assets and effects of insurance coverage on the merits and as applicable to defense, in respect to mediation, settlement negotiations, etc." *Pls.' Disqualification Mot.* at 7. The Court takes Plaintiffs argument to be that Drummond Woodsum's

11

joint representation on behalf of both the town of Dover-Foxcroft, Maine and Mr. Hutchins, individually and as former selectman of the town, potentially makes it harder for the Plaintiffs to recover money—either by prevailing on any of the remaining state claims or through a successful settlement.

Not only is Plaintiffs vague and singular mention of "prejudice" speculative rather than a specific and identifiable harm, but it is also a conceivable outcome even if both Mr. Hutchins and the town of Dover-Foxcroft had separate counsel.  In other words, a potentially less favorable litigation payout is possible with or without disqualification.  Furthermore, the Plaintiffs appear to be under the misimpression that the Defendants have filed crossclaims against each other.  *Pls.' Disqualification Mot.* at 7 (stating the case "involves the assertion of a claim by one client against another client represented by the same lawyer in the same actual pending litigation"). However, as the Defendants pointed out, "[n]o cross-claims have been asserted between Mr. Hutchins and the Town, nor is there currently any reasonable basis to anticipate such claims being made." *Defs.' Disqualification Opp'n* at 7.  The Plaintiffs do not face actual prejudice just because the Defendants' interests are aligned.

Thus, the Court alternatively concludes that the Plaintiffs' request for disqualification is denied because the Plaintiffs failed to satisfy the actual prejudice prong of *Morin*.

## V.    CONCLUSION

The Court DENIES Plaintiff's Motion to Disqualify Attorney Oliver Walton and Drummond Woodsum (ECF No. 26).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of January, 2026

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ROBERT OLSZEWSKI, JR., et ux., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:24-cv-00209-JAW |
| | ) | |
| BARRY HUTCHINS, *individually and as former selectman*, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION FOR JUDICIAL RECUSAL**

I deny as non-meritorious the plaintiffs' motion for recusal, concluding that no objective, knowledgeable member of the public would find a reasonable basis for doubting my impartiality and that none of the specific grounds for recusal applies to this case.

**I.    BACKGROUND**

On June 7, 2024, Robert and Julie Olszewski (Plaintiffs), husband and wife, filed a lawsuit against Barry Hutchins, individually and as former selectman, and the town of Dover-Foxcroft, Maine (the town), alleging that Mr. Hutchins and the town (collectively, Defendants) violated their federal and state constitutional rights. *Compl. Including Req. for Declaratory and Injunctive Relief* (ECF No. 1) (*Compl.*). More specifically, the Olszewskis claimed that Mr. Hutchins and the town violated Mr. Olszewski's rights under the First and Fourteenth Amendments to the United States Constitution, Article One, Section 6-A of the Maine Constitution, the Maine Human Rights Act, and the Maine Tort Claims Act by retaliating against him for

public advocacy. *Id.* at 9. Mr. Olszewski sought compensatory damages and a preliminary injunction, and Ms. Olszewski sought damages for loss of consortium. *Id.* at 10. On August 2, 2024, before the lawsuit had been served on the Defendants, the Olszewskis filed an amended complaint. *Pls.' First Am. Compl. Including Req. for Declaratory and Injunctive Relief* (ECF No. 5) (*Am. Compl.*).

On August 5, 2024, Attorney Jeana M. McCormick of the law firm of Drummond Woodsum entered her appearance on behalf of each Defendant, *Notice of Appearance* (ECF No. 6), and on August 12, 2024, each Defendant waived service of process, *Waiver of Serv.* (ECF Nos. 7, 8). On October 2, 2024, the Defendants filed a motion to dismiss the amended complaint. *Defs.' Mot. to Dismiss* (ECF No. 9). On October 23, 2024, the Olszewskis filed their opposition to the motion to dismiss. *Pls.' Opp'n to Defs.' Mot. to Dismiss* (ECF No. 13). On November 6, 2024, the Defendants filed a reply to the Plaintiffs' opposition. *Defs.' Reply in Support of Mot. to Dismiss* (ECF No. 14).

On February 19, 2025, Chief Judge Lance Walker, who had been originally randomly assigned the case, issued an order of recusal. *Order of Recusal* (ECF No. 15). On the same day, the case was randomly assigned to me. On July 29, 2025, I issued a seventy-one-page order granting the Defendants' motion to dismiss the federal claims and dismissed without prejudice the supplemental state law claims, *Order on Mot. to Dismiss* (ECF No. 18) (*Dismissal Order*), and on the same day, a judgment of dismissal without prejudice was issued. *J. of Dismissal* (ECF No. 19).

On August 25, 2025, the Plaintiffs filed a motion for reconsideration and for leave to file an amended complaint. *Pls.' Mot. and Mem. in Support to Recons. Order and J. Date[d] July 29, 2025 and for Leave to Amend the First Am. Compl.* (ECF No. 20) (*Mot. to Recons.*). On September 15, 2025, the Defendants filed their opposition to the motion for reconsideration and motion to amend complaint. *Defs.' Opp'n to Pls.' Mot. for Reconsideration and for Leave to File Second Am. Compl.* (ECF No. 21). On September 28, 2025, the Plaintiffs filed their reply. *Pls.' Reply to Defs.' Opp'n to Pls.' Mot. for Recons, and Alteration of the Ct.'s Dismissal of Pls.' Mot. for Recons.* (ECF No. 22).

On November 12, 2025, Attorney Jeana M. McCormick moved to withdraw her appearance on behalf of the Defendants, *Mot. to Withdraw Appearance* (ECF No. 24), which the Magistrate Judge granted the next day. *Order* (ECF No. 25). On November 12, 2025, Attorney Oliver M. Walton of the law firm of Drummond Woodsum entered his appearance on behalf of the Defendants. *Notice of Appearance* (ECF No. 23).

On November 16, 2025, the Plaintiffs moved to disqualify Attorney Walton and the law firm of Drummond Woodsum as counsel for the Defendants. *Mot. to Disqualify Att'y Oliver Walton and Drummond Woodsum* (ECF No. 26). On December 5, 2025, the Defendants opposed the motion to disqualify. *Defs.' Opp'n to Pls.' Mot. to Disqualify* (ECF No. 28).

On December 2, 2025, the Plaintiffs moved for my recusal from this case. *Pls.' Mot. for Recusal of Judge Woodcock and Ancillary Relief in Form of Vacating or Reversal of Dismissal Order date[d] July 29, 2025* (ECF No. 27). On December 11,

2025, the Plaintiffs filed a corrected version of their recusal motion. *Pls.' Mot. for Recusal of Judge Woodcock and Ancillary Relief in Form of Vacating or Reversal of Dismissal Order date[d] July 29, 2025 **corrected page alignment*** (ECF No. 29) (bold in original entry) (*Pls.' Recusal Mot.*). On December 23, 2025, the Defendants opposed the Plaintiffs' motion for my recusal. *Defs.' Opp'n to Pls.' Mot. for Recusal* (ECF No. 30) (*Defs.' Recusal Opp'n*). On December 28, 2025, the Plaintiffs filed their reply to Defendants' opposition. *Pls.' Reply to Opp'n to Pls.' Mot. to Recuse Hon. Judge A. Woodcock (sic)* (ECF No. 31) (*Pls.' Recusal Reply*).

## II.    THE PARTIES' POSITIONS

### A.    The Plaintiffs' Motion

#### 1.    General Allegations

The Plaintiffs base their recusal motion on "the appearance of impropriety and actual conflict of interest arising from [my] familial relationship with [my] brother, Timothy Woodcock, a former partner in or equity owner in the Maine law firm of Eaton Peabody." *Pls.' Recusal Mot.* at 1. The Plaintiffs explain that the law firm of Eaton Peabody "had a long history of representing and regularly represented the Town of Dover-Foxcroft . . . in legal matters." *Id.* Mr. Olszewski alleges that "Eaton Peabody played a role in matters that concerned his complaints of violation of his civil rights by the Selectmen during 2022 and 2023." *Id.* at 1-2. Specifically, Mr. Olszewski says that Attorney Jonathan Pottle of Eaton Peabody responded to his request for town records on November 28, 2023. *Id.* at 2. The Plaintiffs assert that

Eaton Peabody conferred with Drummond Woodsum on matters relating to Mr. Olszewski's claims against the town going back as far as 2007. *Id.*

### 2. My Assignment to this Case

The Plaintiffs claim that my random assignment to this case on February 19, 2025 was inappropriate because I was "one of four other Judges (and probably more) available for assignment in the Maine District." *Id.* The Plaintiffs assert that "[t]he use of random assignment to Judge Woodcock is troubling where Judges of no ties of family or history of legal practice in or near Piscataquis County (*as opposed to Judge Woodcock, and Judge Walker who recused*) could at the very least prudentially have been assigned." *Id.* at 2-3 (emphasis in original). The Plaintiffs contend that the Court invited problems by "the assignment of a local to the Northern District" and should have assigned a judge who "did not have substantial ties in the Northern District." *Id.* at 3.

### 3. Timothy C. Woodcock, Eaton Peabody, Katahdin Law and the town of Dover-Foxcroft

The Plaintiffs next state that they "recently discovered, that Judge Woodcock's brother, Timothy Woodcock, is a partner or equity owner at Katahdin Law L.L.C. and was formerly a partner or equity owner at Eaton Peabody." *Id.* at 4. They allege that formerly Eaton Peabody and currently Katahdin Law, including Timothy Woodcock, "regularly represented and represent the Town of Dover-Foxcroft in a variety of legal matters, including but not limited to real-estate transactions, advising on legal compliance, drafting ordinances, and ensuring the community regulations comply with state and federal laws." *Id.* at 3-4. The Plaintiffs state that the relationship

5

between Eaton Peabody and Katahdin Law and the town of Dover-Foxcroft is "financially a significant and ongoing and professional and financial relationship between the law firm and the Defendant, the Town of Dover-Foxcroft." *Id.* at 4. They attach an exhibit that reflects payments from the town of Dover-Foxcroft to Eaton Peabody from 2017 through 2025. *Id.*, Attach. 1, *Email from Alsina Brenenstuhl, Town Manager, Dover-Foxcroft to Bob* (Dec. 1, 2025) (*Brenenstuhl Email*).

The Plaintiffs observe that the law firm of Eaton Peabody closed on June 30, 2025, and Attorneys Woodcock and Pottle continued the practice of law in the law firm of Katahdin Law, which, they say, continues to represent the town of Dover-Foxcroft. *Id.* The Plaintiffs footnote that "[w]hether this case or any ramifications of this case relate to the unexpected recent closing of Eaton Peabody is unknown at this time." *Id.* at 4 n.1.

After reviewing the legal standards for judicial recusal, the Plaintiffs assert that there is "an undeniably objective basis for a reasonable person to question [my] impartiality." *Id.* at 6. They cite my brother's financial interest in Eaton Peabody and Katahdin Law, my asserted appearance of impropriety, and the law firm's alleged indirect financial interest in the outcome of this case. *Id.* at 6-8. The Plaintiffs also maintain that Attorney Pottle "can be anticipated to be a highly material witness in this matter." *Id.* at 8.

### 4. The Order of Dismissal and Remand

Finally, the Plaintiffs demand that I vacate the July 25, 2025 order of dismissal and that the case to assigned to a different judge. *Id.* at 10.

### B.    The Defendants' Opposition

#### 1.    General Response

The Defendants oppose the motion for recusal and the vacation of the order of dismissal.[1] *Defs.' Recusal Opp'n* at 1-6.  They point out that "[n]either Attorney Pottle nor Attorney Woodcock, nor any attorney or law firm associated with them, has appeared or participated in this litigation."  *Id.* at 1.  They also observe that "[t]he presiding judge is not obligated to monitor every client relationship of every lawyer in Attorney Woodcock's law firm and recuse from every case in which any such client may be involved."  *Id.*  The Defendants also note that the "Plaintiffs have known since at least 2023 that Attorney Pottle and his firm serve as outside counsel to the Town," and yet, "they waited until after the Court granted Defendant's motion to dismiss – and almost a year after they filed their Amended Complaint – before seeking the recusal of the presiding judge."  *Id.* at 2.  They argue that "[t]hat kind of gamesmanship should not be tolerated."  *Id.*

#### 2.    Recusal and the Lack of Entry of Appearance

The Defendants refer to the docket in this case and press the point that "as the pleadings and docket make clear, in this litigation, the Town has always been represented by Drummond Woodsum" and "[n]o lawyer from Eaton Peabody or

---

[1]    The Plaintiffs' motion is denominated as "unopposed" on the docket.  *Unopposed Mot. for Recusal of Judge Woodcock and Ancillary Relief in the Form of Vacating or Reversal of Dismissal Order date[d] July 29, 2025* (ECF No. 29).  The Defendants clarified that they do not object to the Plaintiffs substituting a new motion to correct page alignment issues in the former motion, but they do object to the motion itself.  *Id.* at 1 n.1.

Katahdin Law, including Attorney Pottle, has appeared in this litigation." *Id.* at 3. The Defendants dispute the Plaintiffs' main contention that a judge is required to recuse in a situation where a party to the litigation may be a client of a law firm where the judge has a family connection, "even if the law firm is not participating in the litigation." *Id.*

### 3.  Absence of an Interest that Could be Substantially Affected by the Outcome of the Proceeding

Under 28 U.S.C. § 455(b)(5)(iii), to require recusal a judge must "have an interest that could be substantially affected by the outcome of the proceeding." *Id.* at 4.  The Defendants maintain that any impact on Katahdin Law from this lawsuit is purely speculative and does not warrant recusal. *Id.* at 4-5.

### 4.  Attorney Pottle as a Material Witness

The Defendants are skeptical of the Plaintiffs' claim that Attorney Pottle would be a material witness in this case. *Id.* at 5.  They note that the Plaintiffs "have not proffered any non-privileged information . . . that would not be available from another source." *Id.*  Moreover, there is no allegation that Attorney Pottle is related to me. *Id.*  Finally, even if Attorney Pottle were a material witness, there would be in the Defendants' view no obligation to recuse. *Id.*

### 5.  Other Considerations

The Defendants characterize the Plaintiffs' allegations against my impartiality as speculative and based on mere suspicion, which they say should not form the basis of a recusal. *Id.* at 5.  They worry that my recusal would reward the Plaintiffs for attempting to "manipulate the system for strategic reasons." *Id.* (citing *United States*

*v. Corbin*, 827 F. Supp. 2d 26 (D. Me. 2011) (quoting *In re Allied-Signal, Inc.*, 891 F.2d 967, 970 (1st Cir. 1989)).  Finally, the Defendants note a contradiction between the Plaintiffs' concession that an adverse ruling cannot be evidence of bias and their statements that the order on the motion to dismiss "presents a relevant consideration" and "suggests a deep-seated favoritism or antagonism" on my part.  *Id.* at 6.

### C.    The Plaintiffs' Reply

In their reply, the Plaintiffs clarify that they are proceeding only under 28 U.S.C. § 455, not § 144, and therefore no affidavit or certificate is required.  *Pls.' Recusal Reply* at 1.

The Plaintiffs then address the delay in bringing this motion.  *Id.* at 2.  They claim that it was "only since the [July 29, 2025 Order] have grounds necessary to demand recusal been discovered," namely that Attorney Woodcock had "a substantial financial relationship" with Eaton Peabody.  *Id.* at 2.  They explain that Mr. Olszewski "is disabled" and "has taken some time to process this information."  *Id.*

The Plaintiffs acknowledge that my July 29, 2025 decision was "on balance in some respects favorable to Plaintiffs," but they insist that "a lay observer an objective, disinterested, lay observer, fully informed of the facts, whether the Decision is right or wrong, would entertain a significant doubt as to the Judge's impartiality."  *Id.*  The Plaintiffs maintain that Mr. Hutchins criminally threatened Mr. Olszewski and the town was complicit in his conduct, and my failure to mention this threat constitutes a "striking omission" that "suggests bias."  *Id.* 2-3.

The Plaintiffs decry the Defendants' argument that Attorney Woodcock has no financial interest that could be impacted by this case as based on faulty logic. *Id.* at 3. The Plaintiffs assert that Mr. Hutchins' and the town's position in this matter followed "egregiously erroneous advice" given by Attorney Pottle about whether the town could "with impunity participate, endorse or acquiesce in Hutchins' continuing threat and conduct toward [Mr. Olszewski]." *Id.* at 3-4. They reiterate their perspective that their case could result in a substantial verdict against the town of Dover-Foxcroft. *Id.* at 4.

The Plaintiffs dismiss the Defendants' argument about their delay, claiming that the Defendants' argument is "incorrect and somewhat ironic after the Court held Plaintiff's complaint in abeyance for some nineteen months." *Id.* at 5. Mr. Olszewski concedes that he had "seen attorney Pottle when addressing the Town," but he asserts that he was "unaware if he was an independent attorney or working for a firm." *Id.* As a result, Mr. Olszewski says they "did not move to recuse Eaton Peabody after the Decision but moved the Court to reconsider and amend the Decision." *Id.*

Mr. Olszewski then writes:

> Plaintiff did not then know, did not know at the time Plaintiff filed his First Amended Complaint, and did not know when Judge John Woodcock assumed control of this case, that attorney Pottle was a partner of Eaton Peabody, that Eaton Peabody was although in name outside effectively in house counsel to the Town, or that Timothy Woodcock was a partner of Eaton Peabody or the brother of Judge John A. Woodcock. When Judge Woodcock was assigned to this case, Plaintiff knew that Pottle, working for Eaton Peabody, had effectively precluded his earlier 2023 Freedom of Access requests to Dover-Foxcroft and in an uncertain capacity had been at some Selectman's meetings.

*Id.* Mr. Olszewski insists that he was unaware until months after the July 29, 2025 order that my ruling would have had a "substantial affect" on "Timothy Woodcock as a partner of Eaton Peabody." *Id.* at 6. Mr. Olszewski alleges in a footnote on information that "Timothy Woodcock . . . continues to act as counsel to Dover-Foxcroft." *Id.* at 5 n.3.

Finally, the Plaintiffs deny the assertion that their motion to recuse is an attempt to manipulate the system. *Id.* at 6. Instead, they blame the Court. *Id.* They say that "it is unlikely the presiding Judge would not know the likelihood of his brother's firm being involved with a municipality and at least make inquiry." *Id.* They maintain that the federal court had available judges "who have not built their practice and careers in the same division and District as a Party." *Id.*

## III.   LEGAL STANDARDS

The Plaintiffs are proceeding under 28 U.S.C. § 455,[2] which provides in pertinent part:

> **(a)** Any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> **(b)** He shall also disqualify himself in the following circumstances:
>
> . . .
>
>> **(5)** He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
>>
>>> **(i)**   Is a party to the proceeding, or an officer, director, or trustee of a party;

---

[2]   There is another statutory provision, 28 U.S.C. § 144, that addresses judicial recusal, but the Olszewskis are not proceeding under that section, and the Court has not discussed it. *See Pls' Recusal Reply* at 1.

  **(ii)** Is acting as a lawyer in the proceeding;

  **(iii)** Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

  **(iv)** Is to the judge's knowledge likely to be a material witness in the proceeding.

Turning first to the general standard of § 455(a), this statute requires recusal if a reasonable person, knowing all the facts, would harbor doubts concerning the judge's impartiality. *Rodruquez-Vilanova v. Stryker Corp.*, 987 F. Supp. 3d 153, 154 (D.P.R. 2013) (citing *Lilieberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 860-1 (1988)). This section implicates competing policy interests. On the one hand, "courts must not only be, but must seem to be, free of bias or prejudice." *In re United States*, 158 F.3d 26, 30 (1st Cir. 1998) (citing *In re United States*, 666 F.2d 690, 694 (1st Cir. 1981)). "On the other hand, recusal on demand would put too large a club in the hands of litigants and lawyers, enabling them to veto the assignment of judges for no good reason." *Id.*

Section 455(a) determinations "inevitably turn[] on the facts," and thus, "[c]omparison . . . is an inexact construct" in this context. *Id.* at 28, 31 (internal citation omitted). The First Circuit Court of Appeals has expressed that close questions should be resolved in favor of disqualification. *Id.* at 30. Section 455(a)'s legislative history indicates Congress amended it with in order to shift the balance from one imposing on judges a "duty to sit" to one that resolves close question in favor of disqualification. *See* H.R. REP. NO. 93-1453, at 6355 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351, 6355. This legislative history also indicates, however, that

Congress did not intend for the provision to be used by "those who would question [the judge's] impartiality . . . seeking to avoid the consequences of [the judge's] expected adverse decision." *Id.* Rather, "[n]othing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a 'reasonable fear' that the judge will not be impartial." *Id.* Litigants are "not entitled to judges of their own choice." *Id.*

In *Rodriguez-Vilanova*, the district court quoted the Seventh Circuit:

> A thoughtful observer understands that putting disqualification in the hands of a party, whose real fear may be that the judge will *apply* rather than disregard the law, could introduce a bias into adjudication. Thus the search is for a risk substantially out of the ordinary.

987 F. Supp. 2d at 155 (quoting *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990) (emphasis in original).

In addition to the general standard, § 455(a) creates specific standards, *see* 28 U.S.C. § 455(b)(i-iv), that the Court will discuss separately.

## IV.    DISCUSSION

### A.    The Facts of the Recusal Motion from My Perspective

When *Olszewski v. Hutchins* was randomly assigned to me, there was no hint that I should recuse, and there has not been until the Olszewskis filed their motion to recuse on November 16, 2025. The Olszewskis' 114 paragraph amended complaint refers to his FOAA[3] requests, *Am. Compl.* ¶¶ 23, 24, 25, 80(c), 84(b-c), but does not mention Attorney Pottle's response to one of the requests or any involvement of the

---

[3]    FOAA refers to Maine's Freedom of Access Act, 1 M.R.S. §§ 400-14. *See Blue Sky West, LLC v. Me. Revenue Servs.*, 2019 ME 137, ¶ 1, 215 A.3d 812.

law firms of Eaton Peabody or Katahdin Law. *Id.* To my knowledge, I do not know and have never met Robert Olszewski, Jr.,[4] Julie Olszewski, or Barry Hutchins; I have no connections with the town of Dover-Foxcroft, Maine; and I knew nothing about the disputes that formed the bases of the complaint. Other than the fact that Attorneys Andrews Campbell, Jeanna M. McCormick, and Oliver Walton have occasionally appeared before me in their capacities as attorneys and in my capacity as a district judge, I have no direct connections with Attorneys Campbell, McCormick, or Walton. To my knowledge, I do not recall Attorney Wade McCall, cocounsel with Attorney Campbell, having appeared before me.

During my tenure as a federal judge, my brother Timothy C. Woodcock has practiced law in Bangor, Maine. He was a partner in the law firm of Eaton Peabody throughout my time on the federal bench from June 2003 until June 2025, when Eaton Peabody dissolved. At that time, he began practicing law in the law firm of Katahdin Law. To my knowledge, I have never met Attorney Jonathan Pottle, and I do not know his employment history, except I am aware that he practiced law with my brother at Eaton Peabody before it dissolved and now works at Katahdin Law with my brother.

---

[4]    In 2008, a Robert Olszewski filed a lawsuit against Mayo Regional Hospital, *Robert Olszewski v. Mayo Regional Hospital*, 1:08-cv-00268-JAW, and I was assigned the case. However, all the parties' dealings were with Magistrate Judge Margaret Kravchuk, and I do not believe I was called on to issue any rulings. The complaint was initiated on August 11, 2008, and a stipulation of dismissal was filed on December 9, 2009. The Plaintiff in this case, Robert Olszewski, Jr., has not mentioned the prior case in his filings in this one. I am not sure whether the Robert Olszewski in the Mayo Regional Hospital case is the same Robert Olszewski, Jr., who is the plaintiff in this case, but if so, my involvement with the prior case would not be a reason for me to recuse myself from this case.

The United States District Court for the District of Maine maintains a list of individuals, including attorneys, and a list of businesses that are on each judge's recusal list. My brother and the attorneys with whom he has practiced at Eaton Peabody and Katahdin Law have been on my recusal list from the beginning of my tenure as a federal judge. Thus, under 28 U.S.C. § 455(b)(ii), if my brother entered an appearance on behalf of a party in federal court litigation in the District of Maine, I would be automatically recused from the case, and, as I just noted, the recusal list has included all lawyers at Eaton Peabody and now Katahdin Law. If my brother or Attorney Pottle had entered an appearance on behalf of either Mr. Hutchins or the town of Dover-Foxcroft in this litigation, I would have immediately recused myself.

Other than learning from a public record in an occasional lawsuit that my brother, Eaton Peabody, or Katahdin Law represents a particular party in federal lawsuit, I do not know and have never known the clients that Eaton Peabody, Katahdin Law, my brother, or Attorney Pottle represent, and I have never asked them to produce a list of their clients. Specifically, I did not know until the Olszewskis filed their motion for recusal on November 16, 2025 that Eaton Peabody and/or Katahdin Law generally represented the town of Dover-Foxcroft, and I did not know that Attorney Pottle had anything to do—even remotely—with this case.[5]

---

[5]    In their reply, the Olszewskis assert that my brother represents the town of Dover-Foxcroft. *Pls.' Recusal Reply* at 5 n.3 ("Timothy Woodcock . . . continues to act as counsel to Dover-Foxcroft"). This is news to me and may be a typographical error. In ruling on this motion, I must accept the Olszewskis' representation that my brother continues to act a Dover-Foxcroft counsel, but, if so, there has been no suggestion that he has had anything to do with this case.

In the Olszewskis' motion, they stipulate that they are not claiming that I communicated privately with my brother about this case and are assured that if such a communication took place, I would have disclosed it. *Pls.' Mot.* at 8. Rest assured, I have never spoken to my brother about this case or to anyone at Eaton Peabody or Katahdin Law, including Attorney Pottle, about this case. In fact, as I have observed, I did not know that Eaton Peabody and/or Katahdin Law had anything to do with the case until the Olszewskis filed their recusal motion, and I have not spoken to my brother or anyone formerly at Eaton Peabody or Katahdin Law about this motion or the case in general since the Olszewskis filed the recusal motion.

## B.    "Acting as a Lawyer in the Proceeding"

Neither my brother nor Attorney Pottle has "act[ed] as a lawyer in this proceeding," so it seems evident that I should not have to recuse myself under this clause. *See* 28 U.S.C. § 455(b)(ii). Mr. Hutchins and the town of Dover-Foxcroft are well represented by highly competent counsel, and I have no reason to believe that my brother or Attorney Pottle rendered any legal advice in this case, other than Attorney Pottle's single letter to Mr. Olszewski in November 2023, which seems very tangentially related to the facts. Neither my brother nor Attorney Pottle has entered an appearance in the matter, and, as I noted earlier, the amended complaint does not mention Attorney Pottle, Eaton Peabody, or Katahdin Law.

In support of their recusal motion, the Olszewskis cite *SCA Services, Inc. v. Morgan*, 557 F.2d 110 (7th Cir. 1977), but *SCA Services* is markedly different on its facts. In *SCA Services*, the district judge's brother was a senior partner of a law firm

that had entered its appearance on behalf of a party in a case pending before the judge. *Id.* at 113. The Olszewskis also cite *Wilkins v. Palomino*, No. 20-cv-03495-PAB-STV, 2023 U.S. Dist. LEXIS 98442 (D. Colo. June 6, 2023), where the district court discussed a situation where the son of a magistrate judge involved in the case had become a member of a law firm representing a party. Neither situation is germane here, because if my brother, Attorney Pottle, or any attorney in Eaton Peabody or Katahdin Law had entered an appearance on behalf of one of the defendants in this case, I would have immediately recused myself.

The Olszewskis cite no case, nor have I found any, where a federal judge has been required to be recused from a case where the parties are represented by counsel other than the law firm of a judge's relative because the relative's law firm acts as general counsel to one of the parties. To meet the Olszewskis' standards for recusal, each federal judge with a relative within the third degree of separation who practices in a law firm within the district (or elsewhere) would have to demand from the relative's law firm a list of its clients in case one of the clients, though independently represented in federal court litigation, might pose a theoretical conflict with the judge.

Furthermore, law firms are bound to protect the confidentiality of their clients' privileged information, and federal courts would be on tenuous ground demanding client lists from the law firms in which a relative of one of the judges practiced law. I am dubious that the standards the Olszewskis would impose on the federal bench

are true legal standards as opposed to ad hoc demands that the Olszewskis have tailored to generate their argument in this motion.

### C.    "Interest that Could Be Substantially Affected by the Outcome of the Proceeding"

The Olszewskis next contend that my brother has an "interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(iii). To make this point, the Olszewskis engage in a series of speculations: (1) that they seek damages against the town of Dover-Foxcroft, (2) that they will be successful in their lawsuit, (3) that, if successful, the damage award would be so substantial against the town that it would affect the town of Dover-Foxcroft's finances, (4) that if the town of Dover-Foxcroft were cash-strapped, it would procure fewer legal services from Katahdin Law, and (5) that the reduction in payment to Katahdin Law would affect my brother financially.

Other than the fact that the Olszewskis are suing the town, each of these assumed facts may not happen: (1) the case may not go to trial in federal court, (2) if the case goes forward in federal court, the Olszewskis may not be successful in their lawsuit, (3) if successful, the Olszewskis may be successful against Mr. Hutchins in his personal capacity and not against the town or against Mr. Hutchins in his role as a selectman, (4) if successful against the town, the damage award may not be significant, (5) if the damage award is significant, it may not affect the town's ability to pay for legal services,[6] (6) if the damage award is significant and affects the town's

---

[6]    In Town Manager Brenenstuhl's email, she confirmed that the town of Dover-Foxcroft paid Eaton Peabody annually from 2017 to 2023 a low of $18,636.40 and a high of $47,791,47. *Brenenstuhl Email* at 1-7. To credit the Olszewskis' contention, the damage award would have to be so high that

ability to pay for legal services, the reduction in payments to Katahdin Law may not have a significant impact on the finances of the law firm, and (7) if the damage award is significant and reduces payments for legal services to Katahdin Law, the reduction may not have any impact, much less a significant impact on my brother.  *Compare Pashaian v. Eccelston Props.*, 88 F.3d 77, (2nd Cir. 1996) ("It would simply be unrealistic to assume . . . that partners in today's law firms invariably have an interest that could be *substantially affected* by the outcome of any case in which any other partner is involved") (emphasis in original, internal punctuation omitted), *with Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1113 (5th Cir. 1980) ("[W]hen a partner in a law firm is related to a judge within the third degree, that partner will always be known by the judge to have an interest that could be substantially affected by the outcome of a proceeding involving the partner's law firm") (internal punctuation omitted).

In *Wilkins*, the district judge quotes a Tenth Circuit case, *United States v. Cooley*, 1 F.3d 985 (10th Cir. 1993), that "[r]umor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters" do not satisfy the requirements for removal.  *Wilkins*, 2023 U.S. Dist. LEXIS 98442, at *3 (quoting *Cooley*, 1 F.3d at 993).  In the words of the First Circuit, "a judge once having drawn

---

the municipality could not pay even these relatively moderate fees.  There is no record evidence to support this assertion about the impact of a large damage award on the town fisc.

Nor is there any evidence in this record about whether the town is insured against a damage award, if so, the limits of the coverage, and whether the town's insurer (if there is one) has issued a reservation of rights letter, potentially limiting coverage.  Following the Olszewskis' argument, the jury award would not only have to be substantial, but also would have to either vastly exceed available coverage (if there is coverage) or somehow be excluded under its insurance policy.  There is nothing in the record on this issue.

a case should not recuse himself on an unsupported, irrational, or highly tenuous speculation; were he or she to do so, the price of maintaining the purity of appearance would be the power of litigants or third parties to exercise a negative veto over the assignment of judges." *In re United States*, 666 F.2d 690, 694 (1st Cir. 1981).

Finally, this statutory section requires that a judge know that the case will have a substantial financial impact on a relative. I did not know of any financial impact whatsoever when I issued the order on the motion to dismiss, because I had no knowledge of the Eaton Peabody's and Katahdin Law's relationship to this case, and I still do not know that this case would have any financial impact on Katahdin Law or my brother.

### D.    "Material Witness"

The Olszewskis assert that Attorney Pottle will be a material witness in this case, and this requires my recusal. *See* 28 U.S.C. § 455(b)(iv). I disagree. "Generally, familiarity—even a judge's friendship with prospective witnesses—does not require a judge's recusal under § 455(a)." *United States v. Salemme*, 164 F. Supp. 2d 86, 104 (D. Mass. 1998). But, here, as I have said, I do not know Attorney Pottle at all, and the amended complaint does not refer to him.

Moreover, here, the only information about Attorney Pottle's proposed testimony appears for the first time in the Olszewskis' recusal motion, where they reveal that on November 28, 2023, Attorney Pottle responded in writing to a FOAA request from Mr. Olszewski for emails from four town selectmen from January 2022 to November 20, 2023. *Pls.' Recusal Mot.*, Attach. 2, *Letter from Att'y Pottle to Robert Olszewski, Jr.* (Nov. 28, 2023). In the letter, Attorney Pottle acknowledged Mr.

20

Olszewski's request for "several thousand emails," informed him of the town's estimate of the cost of compliance and the likely delay in producing the records, and asked Mr. Olszewski to confirm that he still wished to proceed. *Id.* at 2. In his response, Attorney Pottle suggested to Mr. Olszewski that he "modify your requests to narrow and identify what public record or records you are requesting based on the subject matter(s), event(s), and related time frame(s)." *Id.*

The Olszewskis also maintain that Eaton Peabody and now Katahdin Law have represented the town of Dover-Foxcroft for a long time and that Attorney Pottle attended selectmen meetings. *Pls.' Recusal Mot.* at 1-2. The Olszewskis propose on calling Attorney Pottle as a witness to examine him about "the subjects of what he advised to [*sic*] Board of Selectmen on how to deal with Plaintiff Robert Olszewski's complaints to the Board, including his complaints regarding hazards, expenditures, disability discrimination, and regarding Defendant Hutchins." *Id.* at 8. The Defendants have questioned whether Attorney Pottle has any "non-privileged information" about the "claims at issue in this case that would not be available from another source." *Defs.' Recusal Opp'n* at 5.

The Olszewskis have not provided me with enough information about the evidence in this case to fully comprehend how Attorney Pottle's proposed testimony would affect their claims against the town and Mr. Hutchins and how much of Attorney Pottle's proposed testimony would be privileged. Attorney Pottle's contemplated testimony about his one response to Mr. Olszewski's FOAA request does not appear to "go directly to the issue of liability," nor would the result of the

litigation appear to be "based in large part on the credibility the fact-finder gives to [his] testimony." *Hadler v. Union Bank & Trust Co.*, 765 F. Supp. 976, 979 (D.S. Ill. 1991). The Olszewskis have not been specific enough about his other proposed testimony concerning the legal advice Attorney Pottle supposedly gave the town, but there is a serious question as to whether Attorney Pottle would be allowed to testify about his legal advice to the town in light of the attorney-client privilege and the work product rule. *See* FED. R. EVID. 502.

To reiterate, "[g]enerally, familiarity—or even a judge's friendship with prospective witnesses—does not require a judge's recusal under § 455(a)." *Salemme*, 164 F. Supp. 2d at 104.

> This is the general rule because it is recognized that the public understands that judges are usually long-standing members of the community in which they serve and although they will inevitably encounter witnesses with whom they, or people close to them, have positive or negative experiences, judges can and will ordinarily ignore those experiences and decide the matters before them impartially.

*Id.* at 104-05. This is not to say there may not instances, although rare, where the nature of the judge's relationship with a potential witness would justify recusal. *Id.* at 105 (discussing cases).

Applying these principles, given my attenuated relationship with Attorney Pottle and what I understand to be his limited admissible testimony, I do not find that the record justifies recusal based on the possibility of Attorney Pottle's testimony at trial.

### E.    Timeliness

One issue raised by the chronology of this situation is that the Olszewskis filed their motion to recuse far into the resolution of this case.  The Olszewskis filed their complaint on June 7, 2024, *Compl.* (ECF No. 1), and an amended complaint on August 2, 2024.  *Am. Compl.* (ECF No. 5).  The Defendants filed their motion to dismiss on October 2, 2024, *Defs.' Mot. to Dismiss* (ECF No. 9), the Plaintiffs responded on October 23, 2024, *Pls.' Opp'n to Defs.' Mot. to Dismiss* (ECF No. 13), and the Defendants replied on November 6, 2024.  *Defs.' Reply in Support of Mot. to Dismiss* (ECF No. 14).  Chief Judge Walker recused on February 19, 2025.  *Order of Recusal* (ECF No. 15).  The case was randomly assigned to me on the same day.  I issued a seventy-one-page decision on July 29, 2025.  *Order on Mot. to Dismiss* (ECF No. 18). The Olszewskis did not file the motion to recuse until November 16, 2025.  *Pls.' Recusal Mot.*

From the day the case was assigned to me, the Olszewskis had nine months to realize that Attorney Jonathan Pottle, the lawyer who wrote Mr. Olszewski on November 20, 2023 was my brother's law partner.  Although Mr. Olszewski excuses his own delay by referring to his disability, this only takes him so far.  One of the considerations in any motion to recuse is whether the litigant has filed the motion to recuse only after a judge has issued a decision adverse to him.  *See In re United States*, 666 F.2d at 694.  In *In re United States*, the First Circuit asked whether the relationships being complained of were "obvious" long before the motion was filed.  *Id.* Here, the fact that my brother practiced law at Eaton Peabody was not a secret, and

that Attorney Pottle practiced law there was obvious from the letterhead on his November 20, 2023 response to Mr. Olszewski's FOAA request.

In *In re United States*, the First Circuit warned against litigants who proceed forward with a case to "test the court's reaction only later to marshal previously known information in an attempt to get a proverbial second bite at the apple." 666 F.2d at 694. The First Circuit observed that "[e]ven if a litigant were not consciously attempting to manipulate the circumstances to his benefit, the potential waste of judicial resources alone requires that a motion for disqualification be timely filed." *Id.*

In other words, "[i]t is well-established . . . that a party 'seeking disqualification of the judge must do so at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification.'" *Salemme*, 164 F. Supp. 2d at 95 (quoting *United States v. Kelly*, 519 F. Supp. 1029, 1049 (D. Mass. 1981), *aff'd sub nom. In re United States*, 666 F.2d at 690). *See also El Fenix de Puerto Rico v. The M/Y Johanny*, 36 F.3d 136, 141 n.6 (1st Cir. 1994) (citing 7 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 63.07 [2.-2] (2d ed. 1993) ("[A] litigant who is aware of a potential ground of recusal should not be permitted to 'sandbag' that ground, hoping for a satisfactory resolution, but retaining a ground of attack on the judge's rulings"). Here, the Olszewskis waited until after they received my ruling, which obviously disappointed them, to demand that I recuse myself from their case, despite publicly available information that my brother has been Attorney Pottle's partner throughout the events in this case.

### F.    Random Assignment Procedure at the United States District Court

The Olszewskis' attack on the random assignment of cases in the District of Maine is illogical and ill-considered.  First, the Olszewskis mistakenly assume that the District of Maine is divided into the Northern Division and the Southern Division. *Pls.' Recusal Mot.* at 2-3 ("[I]t is indeed curious that a federal Court . . . would invite problems by assignment of a local to the Northern District rather than to a Judge who did not have substantial ties in the Northern District").  Although the District of Maine was once divided into a Northern Division and Southern Division, Congress did away with the distinction in 1978.  28 U.S.C. § 99, Act of Nov. 2, 1978, Pub. L. 95-573, § 2, 92 Stat. 2458, ("Maine constitutes one judicial district").  Civil cases are assigned district-wide to a judge without consideration as to where the complaint was filed or where the judge has chambers.

Second, Congress has provided that "[t]he business of the court having more than one judge shall be divided among the judges as provided by the rules and orders of the court."  28 U.S.C. § 137.  The District of Maine has stipulated by local rule that judges will be assigned to cases by random assignment.  D. ME. LOC. R. 3(g) ("New cases will be assigned randomly to an available judge who is not recused from hearing the case").  For the Court to have separated out the Olszewskis' case and assigned it in a non-random manner would have violated Local Rule 3(g).

Third, as of February 2025, there were four judges (other than myself) potentially available for reassignment once Chief Judge Walker recused himself, and not surprisingly, each federal judge in Maine has connections throughout the state.

To break the local rule of random assignment, there would have had to have been a very good reason, and, as I have discussed, there was no reason to do so; nothing about the complaint suggested any conflicts that would have precluded my assignment.

### G.    Unfavorable Ruling

On July 29, 2025, I issued a seventy-one-page order on the Defendants' motion to dismiss. *Dismissal Order* at 1-71. Although I dismissed the federal claims against the Defendants, I did not rule on the merits of the state claims and declined to exercise supplemental jurisdiction over the state claims. *Id.* at 68. As a consequence, the Olszewskis were free to proceed in state court with their state claims if they chose to do so.

The Olszewskis, however, were clearly very disappointed with my July 29, 2025 dismissal order, and on August 25, 2025, they filed a motion for reconsideration, describing the opinion as "plainly wrong." *Mot. to Recons.* at 3. They assert that I "finesse[d] the relevant question." *Id.* at 9. They maintain that the "integrity of the entire Decision" was undermined. *Id.* at 11-12. They also sought to amend their complaint to "plead more fully the retaliatory First Amendment violation." *Id.* at 7.

In their motion to recuse, the Olszewskis first "accept that this ruling does not constitute a basis for bias or partiality in itself." *Pls.' Recusal Mot.* at 3. But in the very next sentence, they contradict themselves:

> However, the circumstances of Judge Wood[c]ock's unreasonable and arbitrary finesse of the highly criminal threat by Defendant Hutchins against Plaintiff Robert Olszewski's life and mental well being suggests a 'deep-seated favoritism or antagonism' which, while it may not make

fair judgment impossible (cf. *Liteky*, 510 U.S. at 555), presents a relevant consideration.

*Id.* Then, in their reply, the Olszewskis dispute that they are claiming that I should recuse myself because of my decision. *Pls.' Recusal Reply* at 2 ("Defendants[] argue that Plaintiffs' Motion . . . is premised on the Decision dismissing the case. This is incorrect"). But, once again, they attack the decision, saying that "a lay observer an objective and disinterested, lay observer, fully informed of the facts, whether the Decision is right or wrong, would entertain a significant doubt as to the Judge's impartiality." *Id.* They describe the order as a "remarkable finesse." *Id.* They end by saying that the "nature and logic of the Decision, right or wrong, when combined with" other factors, "confirms reasonable question as to the impartiality of the presiding judge." *Id.* at 3.

On November 18, 2025, the First Circuit addressed, once again, whether a judicial decision could properly provide the ground for recusal. In *United States v. Medoff*, 159 F.4th 107 (1st Cir. 2025), the First Circuit observed that "as the Supreme Court explained in *Liteky*, 'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.'" *Medoff*, 2025 U.S. App. LEXIS 30134 at *38 (quoting *Liteky*, 519 U.S. at 555). "Almost invariably, [such rulings] are proper grounds for appeal, not for recusal." *Id.* (quoting *Liteky*, 519 U.S. at 555).

The Olszewskis cannot have it both ways. They cannot disclaim any suggestion that I should recuse myself based on my decision and then insinuate that my decision was so erroneous that it reflects bias and I should recuse myself on that basis. I agree with the Olszewskis when they say that my July 29, 2025 decision

cannot be grounds for recusal.  Whatever else the Olszewskis may think about the decision, they cannot say that I failed to give the motion and their responses thorough and detailed consideration.  I make no claim of judicial infallibility, and, if the Olszewskis appeal the decision, the First Circuit will review the order and assess its soundness.  But I reject the Olszewskis' repeated implications that the content of the July 29, 2025 order reflects any bias or partiality on my part.

### H.    Whether My Impartiality Might Reasonably Be Questioned

I return to the general standard that a judge should recuse himself or herself "whenever his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  I simply cannot credit the Olszewskis' first contention that I should have recused myself before I issued my July 29, 2025 dismissal order, or that I should vacate the order.  As this order demonstrates, before issuing the July 29, 2025 order, I had no basis whatsoever to believe there was any reason for my recusal, and, in my view, there is no reason for me to vacate it based on the content of the Olszewskis' motion for recusal.

I am wholly unconvinced that my brother's practice of law at Eaton Peabody and Katahdin Law in which the law firms apparently generally represented the town of Dover-Foxcroft but not in this case provides grounds for recusal.  Lacking any evidence that either Eaton Peabody or Katahdin Law have a direct financial stake in this litigation, the Olszewskis have hypothesized a farfetched, indirect stake, relying on multiple unlikely and unproven speculations.  I conclude that no "objective, knowledgeable member of the public would find a reasonable basis for doubting [my] impartiality." *Medoff*, 2025 U.S. App. LEXIS 30134, at *37-38 (quoting *In re Boston's*

*Children First*, 244 F.3d 164, 167 (1st Cir. 2001) (quoting *In re United States*, 666 F.2d at 695).

## V.    CONCLUSION

I DENY as non-meritorious Plaintiffs' Motion for Recusal of Judge Woodcock and Ancillary Relief in Form of Vacating or Reversal of Dismissal Order date[d] July 29, 2025 **corrected page alignment** (ECF No. 29).  I DISMISS as moot Plaintiffs' Motion for Recusal of Judge Woodcock and Ancillary Relief in Form of Vacating or Reversal of Dismissal Order date[d] July 29, 2025 (ECF No. 27).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of January, 2026